No. 21,117.

M. C. WILLIAMS, *Appellee*, v. THE HOME INSURANCE COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. HAIL INSURANCE—*Oral Contract of Agent—Premium Retained by Company—Contract Valid—Estoppel.* In an action on an alleged oral contract for insurance, it is held, on the facts stated in the opinion, that the insurance company by retaining control and exercising ownership over the premium paid to its local agent is estopped to deny that it contracted to insure plaintiff's wheat crop against loss by hail, notwithstanding its local agent had no authority to make an oral contract for insurance.

2. SAME—*Amount of Loss—Incompetent Evidence Admitted.* Evidence of the amounts paid by the defendant to other persons in settlement of losses to wheat crops occasioned by the same storm is held, in the circumstances stated in the opinion, incompetent; and because of the failure of plaintiff to establish by competent evidence the amount of his loss, the judgment is reversed and the cause remanded for trial of that issue.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed December 8, 1917. Affirmed in part and reversed in part.

*E. C. Wilcox, Myrtle Youngberg,* both of Anthony, and *C. H. Mauntel,* of Alva, Okla., for the appellant.

*Vernon L. Day,* and *Donald Muir,* both of Anthony, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was one upon an oral contract for hail insurance. The plaintiff recovered and the defendant appeals.

In April, 1915, M. C. Williams, a farmer living in Harper county, desired insurance on his wheat crop and went to J. C.

Elvin, local agent at Harper for the Home Insurance Company. He had insured his wheat with the same agent the previous season. Elvin prepared an application for insurance upon the regular form prescribed by the company, setting out a description of the land, the amount of wheat to be insured, the amount of the premium and with a provision that it should not be binding upon the company until approved by the agent at Oklahoma City. Williams signed the application and gave Elvin his personal note in full payment of the premium, which amounted to $117.48. Elvin thereupon deposited in a bank in Anthony the amount of the note less his commission as local agent, taking the bank's certificate of deposit for $85.44, payable to the Home Insurance Company, which he placed in an envelope with the application and mailed to the office of the company at Oklahoma City. The evidence is that at this time the defendant's manager at Oklahoma City was sick in a hospital. For some reason no written policy was issued by the company on the application. However, sometime during the month of May the defendant company learned that the certificate of deposit had been issued, and on May 22 wrote the bank as follows:

"On May 21st you wrote Mr J. C. Elvin of Harper, Kansas, stating that you had issued on April 26th your certificate of deposit No. 1403, payable to the Home Insurance Company for $85.44. Beg to advise that we have never received the same, and wish to notify you not to pay the same if presented.

"In talking with our banker here he tells us that it is the custom where an indemnity bond is issued to a bank they will issue a duplicate certificate of deposit. If you will kindly fill out an indemnity bond on your form and send same to us we will have same executed and approved, at which time you can issue us a duplicate certificate of deposit."

The cashier of the bank was absent on a vacation when this letter came and it was never answered. Sometime in June a hailstorm partially destroyed plaintiff's wheat. An adjuster of the defendant went to Harper and adjusted losses sustained by eight or ten other farmers, occasioned by the same storm. He testified that through Mr. Elvin he learned of plaintiff's loss, and made an adjustment with plaintiff, subject to the approval of the company. By this adjustment plaintiff's loss was fixed at $294, but the company never approved the adjustment.

The answer of the defendant was a general denial, and a special denial that Elvin was, authorized to make an oral contract of insurance.

There is a complaint that the court received incompetent evidence and ruled out competent evidence. The plaintiff was permitted to testify to conversations with the local agent at the time the application was signed, in which the agent stated his intention to deposit the premium in the bank to the credit of the insurance company. This could not have prejudiced anyone, because it cannot be disputed that the money was deposited to the credit of the insurance company, and the company notified by letter of that fact. Besides, long before the loss occurred, the company received notice of the fact that the money had been deposited to its credit, and assumed to exercise control and ownership over the fund. By reason of this fact we think the defendant company is liable to the plaintiff, conceding that it had never authorized its agent to enter into an oral contract of insurance. It is estopped now to claim that he had no such authority, because with full notice of the fact that the money had been deposited in the bank to its credit as a premium for the insurance, it notified the bank not to pay the money out to anyone else, and elected to consider the premium as belonging to it. The money is still held by the bank; neither plaintiff nor anyone else, so far as the evidence shows, has ever interfered with defendant's right to collect it. When the defendant company wrote the bank claiming ownership of the deposit, it knew that no policy had been issued to plaintiff or to anyone else for which that deposit represented the premium; yet it was willing to accept and endeavored to secure possession of the premium at a time when no loss had been sustained. If plaintiff's wheat had been harvested without loss from storms, the defendant would have profited by the premium, and its own neglect to approve the application and issue a written policy ought not to relieve it from liability to the assured. It would be unconscionable to permit defendant to hold the premium in the bank subject to its control, and in the event plaintiff's wheat escaped loss, collect the premium, and refuse to collect it in order to relieve itself from liability, in the event loss occurred.

Before notifying the bank to hold the premium subject to its order the defendant company could have required, if it deemed

that essential, another written application from plaintiff, or it could have issued a written policy without such an application upon information easily obtained from its local agent. By exercising control and ownership over the premium it placed itself in a position to retain the benefits of a contract of insurance, and must assume the burdens of such a contract.

Because of this view of the case we deem it unnecessary to consider the complaints of error respecting evidence admitted to show agency of Elvin or of the adjuster. We do not think the jury were misled by failure of the court to define what was meant by affirmative claims, nor could there have been any prejudicial error in the instructions respecting agency. It may be conceded that the local agent had no authority to make an oral contract of insurance; if it be further conceded that the evidence offered to establish this was not sufficient, and that the instructions given in respect to this issue were erroneous, still the agent had authority to take applications for and receive premiums in payment of policies which were to be issued when the company approved the written application. The plaintiff never applied for an oral contract, and neither he nor the agent had such a contract in mind. The plaintiff made the written application on the usual blanks, and while the application was not available for evidence, the general terms of the application were sufficiently shown by the plaintiff's testimony and that of the agent. The application was received by the company because it was sent by mail, postage paid, and properly addressed to the home office. The defendant, without approving the application by issuing a policy, never disapproved it, and retained the premium until after the loss occurred. It makes little difference whether we call this an oral contract of insurance or what it is termed. It became a contract of insurance when defendant elected to accept and retain the premium, although the terms of the contract had to be established by oral evidence.

Notwithstanding what has been said, another trial will be necessary because of the failure of plaintiff to prove the amount of his loss. He produced a number of witnesses who lived in the same county and who had sustained loss by the same storm. Over the defendant's objection they were permitted to testify what per cent of loss they were paid by de-

fendant. None of them had ever seen plaintiff's wheat after it was injured, and, of course, the evidence was not competent for the purpose for which it was offered. The defendant never accepted or approved the adjustment made by its agent, and the plaintiff could not rely upon that as fixing the amount of his loss. The parties may be able to agree upon the loss sustained by the plaintiff; if not, a new trial will be ordered to determine that question. Judgment reversed and cause remanded.