[Civil No. 2644. Filed January 30, 1928.]

[263 Pac. 584.]

THE SOUTHERN CASUALTY COMPANY, a Corporation, Appellant, v. WILLIAM H. HUGHES, Appellee.

208

Messrs. Sutter & Roche, for Appellant.

Mr. C. T. Reddington and Mr. Edwin F. Jones, for Appellee.

LOCKWOOD, J.—William H. Hughes, hereinafter called plaintiff, brought suit against the Southern Casualty Company, a corporation, hereinafter called defendant, in the superior court of Cochise county. The complaint, after setting up certain formal matters, reads as follows:

"That on or about the 23d day of August, 1923, the plaintiff and defendant for a valuable consideration then expressed as hereinafter stated, entered into an oral agreement or contract for the insurance of the plaintiff from that date for the period of 1 year, and as evidence of said insurance thereby the defendant agreed with the plaintiff to issue to him an accident policy in writing and therein and thereby to protect him to the extent of $5,000 against death or any accident or injury to his person while engaged in the business of operating and working in a certain mine at or near the city of Bisbee, Cochise county, Arizona, as foreman of and working in such mine, as expressed and agreed to in said oral agreement or contract. That the plaintiff relying upon said oral

agreement or contract of insurance, and the defendant did insure and intended to insure the plaintiff, and the plaintiff thereupon paid to the defendant one hundred dollars in cash as demanded by the defendant and as he had agreed to do, and also paid to the defendant an additional sum, being a premium assessment of 6 per cent. per month as theretofore agreed, on a basis of $5 per day, being the daily wages as agreed by the plaintiff and defendant in said oral agreement or contract; that the plaintiff, relying upon said oral agreement or contract, immediately entered upon the permance (performance) of the said work and continued therein working in said mine, and also continued to pay the defendant said assessment of 6 per cent. per month on said wages in accordance with the terms of said oral agreement or contract. That the defendant has wholly failed to issue plaintiff said policy or any policy as it has so agreed as aforesaid. That thereafter, to wit, on the 14th day of November, 1923, the plaintiff, while in the performance of his work in such capacity, and while working in said mine, and while said oral agreement or contract was in full force and effect, the plaintiff met with an accident resulting in the loss of both eyes and the permanent vision thereof, and that such accident, causing the loss of both eyes, was unforeseen by the plaintiff and would have been unforeseen by any man of ordinary intelligence in the exercise of ordinary care under like or similar circumstances; that the said accident was not due to any negligence on the part of the plaintiff, and that prior and at the time of said injury, as aforesaid, plaintiff was in the exercise of due care and caution for his own safety and the safety of all others connected therewith.''

Thereafter there were allegations of the earning capacity of plaintiff and the damage thereto by reason of the accident, and a prayer for judgment in the sum of $5,000.

Defendant moved to make the complaint more definite and certain, demurred on the ground that it did not state facts sufficient to constitute a cause of

action, entered a general denial of the allegations of the complaint, and then set up a separate answer, which raised several defenses: First, that the contract of insurance set forth in the complaint was *ultra vires;* second, that no such contract of insurance was made; and third, that if defendant's agent, through whom application for the policy was made, did enter into any such contract of insurance as set forth in the complaint, it was made without any authority from defendant, and without its knowledge or subsequent ratification, and was beyond the scope of authority of such agent. To this a reply was filed, setting up, in substance, that the contract was not *ultra vires,* or that if it was, defendant had represented that it was fully authorized and empowered to make such contract of insurance, and that plaintiff, relying upon its representations, entered into the contract and paid the premium thereon which was charged by defendant therefor, and that defendant, having received the full benefit of such contract of insurance was not permitted to plead that it was *ultra vires.* Plaintiff further denied all the other affirmative defenses of the answer. The motions to make more definite and certain were denied and the demurrer overruled, and the case was tried before a jury, which returned a verdict in favor of plaintiff for the full amount. Thereafter a new trial was granted and the case was a second time presented to a jury, which also returned a verdict in favor of plaintiff for the full amount, and judgment was entered thereon. After the usual motion for new trial was made and overruled, the matter was brought before us for review.

There are some 27 assignments of error, many of which contain numerous subdivisions. There are not, however, that many questions of law involved in the assignments, and we shall therefore discuss the case rather in accordance with the legal propositions pre-

sented than the individual assignments. The first question is as to the sufficiency of the complaint. It is claimed by defendant that the action is based upon an oral contract of insurance, and that such agreement is contrary to the provisions of paragraphs 3457 and 3458, Revised Statutes of Arizona of 1913, Civil Code. These paragraphs provide that no insurance policy shall be issued until a copy of the form thereof has been filed at least thirty days with the corporation commission, and that it shall contain certain provisions and shall not contain certain others. There is no doubt that such provisions, if violated by the insurer, will subject it to a fine. It does not necessarily follow, however, that a policy issued which does not comply with the statute will be void. We have discussed the effect of a failure to comply with the standard form of policy in the case of *Scottish Union Nat. Ins. Co.* v. *Phoenix T. & T. Co.*, 28 Ariz. 22, 235 Pac. 137.

In that case we said:

"Were it to be held that the effect of a condition contrary to the statute was to compel the insured to accept the condition or waive the policy, the insurer would have accomplished exactly what the law forbids, viz., limited his liability in a manner prohibited by law. In our opinion the true rule is that the policy is enforceable as it stands, with the forbidden clause struck out."

Following the line of reasoning expressed by the foregoing quotation, a failure of the insurer to comply with the provisions of paragraphs 3457 and 3458, *supra,* does not invalidate the policy it actually issues, but subjects it to a penalty, leaving the policy *as issued* enforceable by the insured. Nor do we think it necessary to allege in the complaint that the defendant was authorized to enter into contracts of insurance against accident or of the nature set up in the complaint. While there are authorities to the

contrary, we think it the better rule that a corporation, when sued for damages on a contract made by it, which has been performed fully by the other party, may not set up in defense that it was not authorized by law to make such contract. 14a C. J. 326. The other objections to the sufficiency of the complaint we need not discuss. They are not well taken, and the court did not err in overruling the general demurrer.

Nor can we say that it was reversible error to refuse to grant the motion to make more definite and certain. Motions of this nature are to a great extent within the discretion of the trial court. The particular points to which they were addressed were shown at the trial to have been fully within the cognizance of defendant at all times after the action was started, so that it could not have been injured by the action of the court.

The real merits of the case itself were raised on the motion made by defendant for an instructed verdict. In order that we may discuss this question intelligently, it is necessary that we review the evidence briefly. On a motion of this nature it must, of course, be taken in the most favorable light in which it can be construed reasonably in favor of plaintiff. Taken so, the facts appear from the testimony as follows:

Plaintiff and William Shields had been partners in the operation of a certain mining lease in the Warren district, and had carried an insurance policy issued by defendant insuring plaintiff and Shields—

"against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death at any time resulting therefrom suffered, or alleged to have been suffered, as the result of an accident occurring while this policy is in force *by any employé or employés of the assured, . . . ,*" (Italics ours.)

Some time thereafter and in August, 1923, the two partners mentioned took in two other partners, Merrill and Charon, to operate another lease. The partners decided that in connection with this lease it would be necessary that they should be insured against accident and went in to see one I. W. Wallace, who was then an agent of defendant, engaged in the solicitation of insurance for it, but not authorized to make contracts of insurance or write policies. Wallace informed the partners that, if it were properly assigned, under the policy of insurance already written all but plaintiff would be insured, but that he was not covered by the policy, whereupon plaintiff stated that he was going out to get some accident insurance for himself. Wallace then said, in substance, that if the partners were willing to pay an extra hundred dollar premium he could arrange the matter so that plaintiff also could be insured. Plaintiff told Wallace to fix it up, and the latter assured him that he would be insured by the next morning when he went to work. The partners paid the two premiums of one hundred dollars each and the regular monthly premiums required by defendant for casualty insurance. Wallace gave certain instructions to the partners as to how they were to keep their time-books and records in order to make the insurance valid to protect plaintiff, which instructions were afterwards carried out by plaintiff and his partners. Later a second written policy in defendant's usual form was delivered to one of the partners. In the policy William Shields was named as the assured, and the same conditions and provisions as to extent of the insurance were contained as in the policy previously referred to. It was apparently assumed by plaintiff, his associates and Wallace that this policy complied with Wallace's agreement to protect plaintiff.

Shortly thereafter, while plaintiff was working on the lease, an accident occurred in which he and several other men were injured. Notice was duly given to the company in proper form by William Shields as the assured, and after an investigation it settled with the other injured parties and made some payments to the plaintiff, but about two months after the accident canceled the policy issued to Shields and notified plaintiff that it disclaimed any liability to him for the reason it had just discovered that he was not an employee but was one of the partners of Shields, the assured named in the policy, and engaged with Shields in the business of operating the lease where the accident occurred.

The evidence also shows conclusively that Wallace was never authorized to make any contract of insurance whatever on behalf of defendant, but was merely empowered to solicit business, take applications, and collect premiums. The applications were forwarded to defendant's general agent in Phoenix, where the policies were issued. The same course was taken with the premiums.

Between the time plaintiff and Wallace had their conversation and the accident, defendant sent an auditor to Bisbee to check over the various policies outstanding there. This auditor visited the lease and was informed by one of plaintiff's partners that all the partners were on the time-book and were insured as well as their employees. He was also given the books to examine. This occurred, according to plaintiff's evidence, some time before the injury, though defendant's testimony indicates it was afterwards.

The vital question involved on this phase of the case is as to whether or not defendant was bound by the act of Wallace or his knowledge of the true situation, or if it was not so bound at the time of the agreement between Wallace and plaintiff, it after-

wards ratified Wallace's act. The evidence is uncontradicted that Wallace was not a general agent of the company with authority to issue policies, but was merely what is known as a soliciting agent, with authority to solicit business, take applications, and collect the premiums on issued policies. Such being the case, he had no authority to bind the company by any contract of insurance. *Iverson* v. *Metropolitan L. Ins. Co.*, 151 Cal. 746, 13 L. R. A. (N. S.) 866, 91 Pac. 609; *Murphy* v. *Con. Ins. Co.*, 178 Iowa 375, L. R. A. 1917B 934, 157 N. W. 855; *Phipps* v. *Union Mut. Ins. Co.*, 50 Okl. 135, 150 Pac. 1083.

The oral contract declared on in the complaint cannot therefore be held valid on the ground that Wallace was authorized to make such agreement. Nor was the company charged with notice of Wallace's acts in this respect. It is true, of course, that notice to an agent is notice to the principal, when the agent is acting within the scope of his authority. 2 C. J. 859. But unless the facts are actually communicated to the principal it is not chargeable with knowledge which an agent acquired in matters not within the scope of his authority. 32 C. J. 1070. Since, as we have shown, Wallace's promise to plaintiff was not within the scope of his authority, no notice of such promise was imputed to the company, and it cannot be bound on the ground of Wallace's knowledge and its acceptance of the premium.

But it is contended, even if defendant was not bound originally by the agreement, it subsequently ratified it. The ordinary rule in this respect is that when an agent has attempted to bind his principal by a contract outside the scope of his authority and the principal afterwards learns of such contracts and accepts or retains the benefit thereof, he will be deemed to have ratified the contract and will be bound thereby. *Williams* v. *Home Ins. Co.*, 102 Kan. 74,

169 Pac. 545; *B. & W. Engineering Co.* v. *Beam,* 23 Cal. App. 164, 137 Pac. 624; *Casady* v. *Manhattan F. Ins. Co.,* 109 Iowa 539, 80 N. W. 521.

In this case there is evidence on behalf of plaintiff that defendant sent its auditor down to inspect the various insurance risks in the Bisbee district some weeks before the accident in which plaintiff was injured occurred, and that he was shown the time-books kept by plaintiff and his partners and was informed of the fact that they were kept in this manner under the instructions of the insurance company's agent because their policy covered plaintiff as well as the ordinary employees of the partnership. It also appears from plaintiff's evidence that all of the premiums on the policy were paid to the company and retained by it, and that no offer was made to return any portion thereof, at least until after the accident occurred. It is true that defendant's evidence was to the effect the auditor made no examination until after the accident, but it was for the jury to determine, under proper instructions, the true facts. If, as a matter of fact, defendant's auditor knew before the accident that its agent had contracted to protect plaintiff against accident while working at the place where he was injured, and defendant thereafter retained the premium which had been paid, in part at least, for such protection by plaintiff or his associates, without repudiating the contract made by its agent, it would be liable thereon, notwithstanding that the agent had no authority to make the contract in the first place, and that the company had no knowledge of his act in so making it until the visit of its auditor, and this, as we have stated, on the evidence presented, was a matter for the jury to determine.

It is urged by defendant that notwithstanding this may be true, when plaintiff received the insurance policy with William Shields as the assured, it was retained and held by him and his copartners with full

knowledge of the facts, and he therefore cannot now claim an oral contract of insurance contrary to its terms. The answer to that contention is that plaintiff was informed by Wallace that a policy of the kind issued to William Shields would protect him, if the books were carried in the manner in which it was testified they actually were carried. He had no reason, if he did inspect the Shields policy, to believe it was not of the kind promised, and is not estopped thereby from setting up the oral contract.

The other grounds given on the motion for an instructed verdict in favor of defendant need not be discussed as we think they are not of sufficient importance to require it.

It is further assigned as error that the court improperly instructed the jury in several particulars. We need discuss but one of these instructions. It reads as follows:

"You are instructed that an agent of an insurance company, having power to solicit insurance and to deliver policies and to collect premiums, is an agent of the company, and has power to bind an accident or casualty insurance company by his oral agreements or insurance where the insured pays or causes to be paid the required premium to the agent, at or about the time the agreement is made, and pays or causes to be paid the successive monthly installments of premium according to such contract."

It is plain that this instruction is erroneous. A soliciting agent has no power to bind the insurance company by an oral contract of insurance even though the insurance company accepts and receives the premium, *unless the company has knowledge, either express or implied, of the agreement.* This instruction was not only erroneous, but highly prejudicial.

The verdict of the jury was a general and not a special one. We cannot therefore determine whether such verdict was based on the undisputed fact that Wallace had made the oral agreement and accepted

the premium thereon and the instruction above quoted, which in effect told the jury that such fact alone was sufficient to sustain their verdict, or on the theory that the company had subsequently thereto been notified of the facts and ratified the agreement by thereafter retaining the premium. A verdict based on the first ground cannot be sustained; a verdict on the second would be. If the evidence on both issues was undisputed, it might be said no harm was done, but on the second issue the time when knowledge reached defendant was sharply disputed, and the time is vital. Because of the fact that we have no means of knowing whether the jury found for plaintiff on the basis of the erroneous instruction as to Wallace's authority, or on the basis of a subsequent ratification after knowledge of the auditor of the promise of Wallace, we are compelled to remand the case.

If there were other errors, it is presumed in view of this opinion they will be avoided on another trial. The judgment is reversed and the cause remanded to the superior court of Cochise county with instructions to grant a new trial in accordance with the views herein expressed.

ROSS, C. J., and McALISTER, J., concur.