John Dale HARRIS, Plaintiff,

v.

FARMERS INSURANCE COMPANY, INC., a Kansas corporation, Defendant.

No. Civ. 84–1133–R.

United States District Court, W.D. Oklahoma.

March 20, 1985.

Clifton D. Naifeh, Miller & Naifeh, Norman, Okl., for plaintiff.

David W. Edmonds, Niemeyer, Edmonds, Noland, Alexander & Hargrave, Oklahoma City, Okl., for defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

The Plaintiff brought this action for bad faith refusal to pay "med pay" benefits against the Defendant, his automobile insurance carrier. The Defendant filed a Motion for Summary Judgment in its favor pursuant to Fed.R.Civ.P. 56, asserting that the policy in question does not afford med pay coverage to the Plaintiff's accident. The motion has been fully briefed and the Court is now prepared to dispose of it with this Order.

The facts relevant to the Motion for Summary Judgment are undisputed. On July 31, 1983 the Plaintiff was operating his motorcycle on Shields Boulevard in Moore, Oklahoma, when the vehicle encountered a defect in the roadway. The Plaintiff apparently lost control of the motorcycle and was thrown to the street. While he was lying on the street, the Plaintiff was struck by an automobile. As a result of the injuries sustained the Plaintiff incurred medical expenses allegedly in excess of ten thousand dollars.

At the time of the accident the Plaintiff was the holder of three automobile insurance policies issued by the Defendant, two of which are relevant to this case. One policy, which covered a 1976 Chevrolet Monza owned by the Plaintiff, afforded med pay coverage in the amount of five thousand dollars under the following provision:

[Allstate agrees] to pay all reasonable expenses actually incurred within one year from the date of the accident for necessary medical services:

(D) to or for a named insured or a relative who sustains bodily injury, caused by accident,

(1) while *occupying* the described automobile or a non-owned automobile, provided the actual use of such automobile is with the permission of the owner, or

(2) through being struck by a motor vehicle while not *occupying* any other motor vehicle. [emphasis added].

The term "occupying" is defined in the policy as "in or upon or entering into or alighting from." The other policy relevant to this case covered the Plaintiff's motorcycle, and afforded no med pay coverage.

There were two potential questions of fact which have since been resolved during the course of briefing the motion. First, the Defendant apparently disputed that the Plaintiff had been injured by being "struck by a motor vehicle." However, the Defendant has now abandoned this position, recognizing in its reply brief that the issue of coverage had been "narrowed" to the extent that the Plaintiff's ability to recover is "dependent upon a resolution of whether the plaintiff was injured while not occupying a motor vehicle." Second, the Plaintiff initially asserted that he had purchased med pay coverage on two different vehicles, and was thus entitled to stack and recover ten thousand dollars in coverage. However, the Plaintiff presented nothing to support this contention, while the Defendant presented evidence which shows that the Plaintiff did not purchase the second med pay coverage until two weeks after the accident. Thus, the Plaintiff is entitled to receive, if at all, the benefits of only one med pay provision.

These factual questions having been resolved, the material facts are undisputed and this case is ripe for disposition, at least as to the liability questions in the suit. The Court therefore proceeds to address the issues raised in the Defendant's Motion for Summary Judgment.

## I.

As the language quoted above demonstrates, the policy in question affords med pay coverage in either of two situations: (1) when the insured is injured while occupying the insured vehicle, the 1976 Chevrolet Monza; or, (2) when the insured is struck by an automobile while not occupying another vehicle. It is the Defendant's contention that the Plaintiff herein falls into neither category. The Defendant argues that provision (D)(2) is inapplicable because the Defendant was occupying, or "alighting from," the motorcycle, a vehicle not covered by the policy, at the time of the accident. And the Defendant finds provision (D)(1) inapplicable because the Defendant was not occupying the covered vehicle, the 1976 Chevrolet Monza, at the time of the accident. The Court will consider the applicability of each of these policy provisions *seriatim*.

## A.

The Defendant's first assertion is that the Plaintiff was "alighting from" the motorcycle at the time of the accident. While the Defendant does not dispute that the Plaintiff was thrown from the motorcycle involuntarily before being struck by an automobile, the insurer nevertheless contends that such activity amounts to "alighting from" the motorcycle. The Plaintiff on the other hand, argues that the phrase "alighting from" is limited to a voluntary exit from a vehicle, and that the Plaintiff was therefore not "alighting from" the motorcycle.

The Defendant's policy does not define the phrase "alighting from." Many courts have considered the phrase and applied a judicial definition. *E.g., St. Paul-Mercury Indemnity Co. v. Broyles*, 230 Miss. 45, 92 So.2d 252 (1957). *See generally* 42 A.L. R.3d 501, 518 (1972). Typical is the following:

> A person is not in the process of alighting if, at the time of the accident, he has completed all acts normally performed by persons getting out and away from the automobile under similar circumstances and if he has embarked on conduct entirely distinct from acts reasonably incident to making an exit out of and away from the car.

*Tyler v. Insurance Co. of North America, Inc.*, 381 F.Supp. 1356, 1360 (N.D.Ala. 1974), *rev'd. on other grounds*, 539 F.2d 1072 (5th Cir.1976). However, the cases in which the term "alighting" has been defined are inapposite and provide no guidance to the Court for two reasons. First, not one case of which the Court is aware involves an injured party who has been thrown involuntarily from a vehicle. In each of the cases studied by the Court the injured party voluntarily exited a vehicle before being struck. Second, it is axiomatic that ambiguity in an insurance policy must be construed in favor of the insured. *E.g., Unigard Insurance Co. v. Studer*, 536 F.2d 1337, 1339 (10th Cir.1976). The courts which have defined "alighting from" have done exactly that: They have construed broadly a policy provision which affords coverage to one alighting from a vehicle, to the benefit of the insured. However, a broad construction of the phrase "alighting from" in this case would work to the insurer's benefit, as the policy provision in question denies coverage to one alighting from a vehicle. Thus, the Court declines to adopt the judicial definitions of the phrase previously expounded by other courts.

It is the opinion of the Court that the phrase "alighting from" is ambiguous. The policy fails to define the term, and it is impossible for either of the parties to determine whether incidents such as the one in the case at bar are covered by the policy. *Accord, Nelson v. Iowa Mutual Insurance Co.*, 163 Mont. 82, 515 P.2d 362, 364 (1973). This being so, the term must be construed

in favor of the insured and against the insurer. *Studer,* 536 F.2d at 1339; *Tipton v. Pike,* 550 F.Supp. 191, 194 (W.D.Okla. 1982), *quoting Dayton Hudson Corp. v. American Mutual Liability Insurance Co.,* 621 P.2d 1155, 1158 (Okla.1980); *Wilson v. Travelers Insurance Co.,* 605 P.2d 1327, 1329 (Okla.1980). The Court therefore concludes that the Plaintiff, who was involuntarily thrown from a motorcycle into the path of an oncoming automobile, was not alighting from the vehicle, for purposes of the policy, when struck by the automobile. As the Plaintiff was not alighting from a vehicle at the time of the injury, he was not occupying "any other motor vehicle" and provision (D)(2) affords med pay coverage for the Plaintiff's injuries.

### B.

■ Assuming *arguendo* that the Plaintiff was alighting from the motorcycle, and therefore occupying it, at the time of the accident, he is nevertheless entitled to med pay coverage in this case. Provision (D)(1) affords such coverage to a named insured injured while occupying the covered vehicle, a 1976 Chevrolet Monza. Although the Plaintiff was occupying a different vehicle at the time of the accident, the legal mechanism of stacking allows him to aggregate all med pay coverage afforded by the policies issued to him as a named insured by the Defendant. *See Duckett v. Allstate Insurance Co.,* 607 F.Supp. 727 (W.D.Okla.1984) (per Russell, J.); *Gray v. Allstate Insurance Co.,* No. CIV–82–1173–W (W.D.Okla. May 17, 1983) (per West, J.). *Cf. Aetna Casualty & Surety Co. v. State Board of Property & Casualty Rates,* 637 P.2d 1251, 1256 (Okla.1981) ("[I]t is unjust to permit the insurer to avoid liability by asserting other insurance clauses denying the insured from receiving that for which he paid a premium."). Thus, the Plaintiff is entitled to the med pay coverage afforded by provision (D)(1) notwithstanding the fact that he was occupying his motorcycle, rather than the covered vehicle, at the time of the accident.

### C.

As the reasoning above demonstrates, the Plaintiff is entitled to five thousand dollars worth of med pay coverage whether or not he was alighting from his motorcycle at the time of the accident. It is thus clear that the Defendant is not entitled to summary judgment on this part of the Plaintiff's claim, and its Motion for Summary Judgment is denied to that extent. The Plaintiff is, however, entitled to summary judgment on the liability portion of the claim, notwithstanding the fact that he has not motioned the Court for such relief. Accordingly, judgment is granted in favor of the Plaintiff as to liability on the availability of med pay coverage.

### II.

The remaining issue raised by the Defendant's Motion for Summary Judgment is whether, on the facts of this case, the Plaintiff can maintain his claim for the tort of bad faith. Because the Court concludes that he cannot, the Defendant's motion is granted to that extent.

■ The Plaintiff argues that the Defendant failed to deal fairly, and in good faith with him by denying med pay coverage. The Plaintiff asserts that, as he is clearly entitled to coverage under provision (D)(2) directly, or under provision (D)(1) through stacking, the Defendant acted in bad faith by refusing to reimburse him for medical expenses incurred in the accident and forcing him to bring this action.

■ The Court does not agree. Although the Court has determined that the Plaintiff is entitled to med pay coverage under the policy, "[r]esort to a judicial forum is not per.se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit." *Christian v. American Home Assurance Co.,* 577 P.2d 899, 905 (Okla.1978). *See also McCorkle v. Great Atlantic Insurance Co.,* 637 P.2d 583, 587 (Okla.1981). The reasonableness of the insurer's conduct in denying the

insured's claim must be determined in light of the law applicable to the claim at the time of denial. *Timmons v. Royal Globe Insurance Co.*, 653 P.2d 907, 914 (Okla. 1982).

 The Court is satisfied that only an inference of reasonableness can be drawn from the Defendant's conduct herein, given the current state of the law. As this Court has previously noted, an insurer does not act in bad faith simply by refusing to stack med pay coverage, as there is no controlling authority governing the stacking issue. *Duckett v. Allstate Insurance Co.*, 607 F.Supp. 728, 731–732 (W.D.Okla.1985). And the Defendant cannot be deemed to have acted in bad faith by litigating the meaning of the phrase "alighting from", as the Court has found it ambiguous. The parties herein had a legitimate dispute as to the construction of that phrase, and the Defendant "had a right to have this dispute settled in a judicial forum." *Manis v. Hartford Fire Insurance Co.*, 681 P.2d 760, 762 (Okla. 1984). Thus, regardless which theory justifies the Plaintiff's recovery, the Defendant did not act in bad faith by denying the claim. Accordingly, the Defendant's Motion for Summary Judgment is granted insofar as it challenges the Plaintiff's claim for the tort of bad faith.

### III.

In summary, the Court determines the following:

1. The Defendant's Motion for Summary Judgment is denied insofar as it seeks judgment on the med pay issue.

2. Summary judgment is granted in favor of the Plaintiff on the med pay issue.

3. Unless the parties reach an agreement concerning the amount of medical expenses incurred by the Plaintiff, a hearing on damages will be held on the Court's motion docket of April 3, 1985.

4. The Defendant's Motion for Summary Judgment is granted insofar as it challenges the Plaintiff's claim for the tort of bad faith.