**Joe P. GARY, Donald G. Barker, Joe L. Gary, Arnold G. Nelson, and Tom Padgham, Plaintiffs,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PA., Defendant,**

**Federal Deposit Insurance Corporation, in its corporate capacity, Jerry W. Barker, Jess R. Porter, Warren H. Porter and R.F. Lee, Intervenors.**

**No. CIV–89–1178–R.**

United States District Court, W.D. Oklahoma.

Dec. 27, 1990.

Terry W. Tippens, Greg A. Castro, Eric S. Eissenstat, Fellers, Snider, Blankenship, Bailey & Tippens, Roy S. Dickinson, Robert G. Grove, Oklahoma City, Okl., John H. Rule, David L. Bryant, Richard D. Koljack, Jr., Gable & Gotwals, Tulsa, Okl., Michael

D. Gray, Hastie & Kirschner, Oklahoma City, Okl., for plaintiffs.

Douglas C. McBee, J. Edward Barth, Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, Okl., Raymond J. Jast, Brian H. Boyle, David R. Carlson, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are cross motions for summary judgment filed by Intervenor Federal Deposit Insurance Corporation ("FDIC") and Defendant American Casualty Company of Reading, Pa. ("ACCO"). Also before the Court is the motion for partial summary judgment filed by the original Plaintiffs herein, Joe F. Gary, Donald G. Barker, Joe L. Gary, Arnold G. Nelson and Tom Padgham. Intervenor R.F. Lee has filed a motion for partial summary judgment incorporating or adopting the FDIC's motion and supporting brief. Intervenors Jess Porter and Warren H. Porter seek partial summary judgment also, incorporating or adopting the motions and briefs of both the FDIC and the original Plaintiffs.

Common to all of these motions are numerous issues concerning whether directors' and officers' liability insurance policies issued by ACCO[1] to Midwest Bancshares, Inc., its subsidiaries, including Security Bank & Trust Company of Midwest City ("Security Bank"), and their officers and directors, including the Plaintiffs and Intervenors herein, provide coverage for a judgment which the FDIC has obtained against Ted Koelsch, one of Security Bank's directors, and for claims asserted by the FDIC against the other directors and officers—Plaintiffs and Intervenors herein—in the case consolidated with this one, Case No. CIV–88–1359–R. The Court finds it unnecessary to reach most of these issues because two exclusions present in both the relevant 1983 and 1984 D & O policies exclude coverage for the FDIC's

judgment and claims. Additional issues are raised by ACCO's motion directed to the claims of Plaintiffs and Intervenors against ACCO for breach of its duty of good faith and fair dealing toward its insureds. The Court will address these issues after addressing the two pertinent exclusion issues.

■ The 1983 and 1984 D & O policies both contain, among others, an endorsement entitled "General Limitation of Coverage Endorsement" which states as follows:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to:

any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

Endorsement No. 1, 1983 Policy;
Endorsement No. 4, 1984 Policy.

The 1983 policy also contains an endorsement entitled "Insured vs Insured" which in relevant part states:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss, as defined in Clause 1(d) hereof, which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(a) of the Policy (hereinafter

---

1. The 1983 policy was originally issued by MGIC Indemnity Corporation ("MGIC"), but ACCO expressly assumed all of MGIC's obli-

gations under the policy by Endorsement No. 11.

called "Institution"), except for a shareholders derivative action brought by a shareholder of the Institution other than an Insured.

Endorsement No. 2, 1983 Policy.

A similar but broader endorsement in the 1984 D & O policy provides as follows:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Insured (as defined in the Policy) based upon or attributable to:

1. Any suit brought by or on behalf of any stockholder or shareholder of the Institution defined in Clause 1(A) of the Policy; or

2. Any shareholders derivative action brought by a shareholder of the Institution defined in Clause 1(A) of the Policy; or

3. Any claim made against any Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(A) of the Policy.

Endorsement No. 10, 1984 Policy.

Defendant ACCO contends that the foregoing exclusions preclude coverage as a matter of law. The FDIC, original Plaintiffs and Intervenors contend that these exclusions do not apply to the FDIC's claims. Alternatively, they contend that application of these exclusions to the FDIC's claims would violate public policy. Additionally, they contend that the so-called "regulatory exclusion" is unenforceable and void because that endorsement was not filed with the Oklahoma Insurance Board as required by Okla.Stat. tit. 36, § 3610(A) (1981).

The Court concludes that the above quoted exclusionary endorsements are unambiguous and apply to the claims brought by the FDIC in its corporate capacity in Case No. CIV–88–1359–R. The FDIC argues that the regulatory exclusion is ambiguous and then seems to suggest that the ambiguity must be resolved in favor of coverage, arguing that

[t]he most intuitive reading of the Regulatory Exclusion, as written, is that it is meant to apply *not* to situations where the claim is made by the FDIC in a direct action against the insured, but rather to situations where the claim against the insured is made by someone other than the regulatory agency and is somehow attributable to or occasioned by an action or proceeding that the agency brought against either the insured or some third party.

Brief in Support of FDIC's Motion for Summary Judgment at p. 51.

The FDIC asserts that had the insurer sought to exclude coverage for losses resulting from claims of a kind asserted in the consolidated case, the insurer could easily have done so by providing that there is no coverage for losses in connection with a claim *made by* the FDIC against directors. The FDIC cites *American Casualty Co. of Reading, Pa. v. Federal Deposit Insurance Corporation*, 677 F.Supp. 600, 603–04 (N.D.Iowa 1987) and *FSLIC v. Mmahat*, Case No. 86–5160, slip op. (E.D.La. Mar. 3, 1988) (1988 WL 19304) as authority supporting the FDIC's construction of the regulatory exclusion.

Although the language "based upon or attributable to" is awkward when used in conjunction with the language "any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation," the Court finds the FDIC's construction of this exclusion to be strained and unreasonable.[2] Reading the endorse-

---

2. Under the guise of interpretation, a court should not give a contract a strained and unnatural construction more favorable to a party thereto than what is expressed in the contract. *E.g., Cities Service Oil Co. v. Geolograph Co.*, 208 Okla. 179, 254 P.2d 775, Syllabus by the Court at 7 & 783 (1953). "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." *Wiley v.*

*Travelers Insurance Co.*, 534 P.2d 1293, 1295–96 (Okla.1974). The FDIC's interpretation, to the extent that it would exclude from the exclusion losses for claims against directors or officers made by the FDIC, is absurd. A more reasonable interpretation, to the extent the language in the "regulatory exclusion" is susceptible to an interpretation that the exclusion is directed to losses due to third-party actions against directors or officers somehow "occasioned by"

ment as a whole, without placing undue emphasis on the words "based upon or attributable to," it is clear that the insured's intent was to exclude coverage for any loss resulting from any action brought by or on behalf of the FDIC in any capacity against a bank director or officer.[3] *Accord Continental Casualty Co. v. Allen,* 710 F.Supp. 1088, 1097 (N.D.Tex.1989) (holding that the language in an identical endorsement in an MGIC-issued 1983 D & O liability policy *"is not* ambiguous"). *See also McCuen v. International Insurance Co.,* No. 87–54–D, slip op. (S.D.Ia. Sept. 29, 1988). *Contra American Casualty Co. of Reading, Pa. v. Federal Deposit Insurance Corporation,* 677 F.Supp. 600, 603–4 (N.D.Ia.) (holding that the identical exclusion endorsement is ambiguous, susceptible to the interpretations urged by both the FDIC and ACCO therein, also urged herein).

■ The failure of ACCO's predecessor and ACCO to file the regulatory endorsement with the Oklahoma Insurance Board and obtain approval therefrom prior to issuance, delivery or use of the endorsement[4] does not render the endorsement unenforceable or void. Section 3610(A) of Title 36 of the Oklahoma Statutes, which contains the proscription against issuance, delivery or use of any endorsements which are not unique and "designed for and used

in relation to insurance upon a particular subject" not filed and approved by the Insurance Board,[5] does not state that such endorsements are void or unenforceable. Surely if the Oklahoma legislature had intended that unfiled, unapproved endorsements be void, it would have so said. Indeed, in other provisions of the Oklahoma Insurance Code originally enacted in the same year, which were also derived from the Arizona Insurance Code and which also begin by stating that "no policy ... shall contain", the Oklahoma legislature went on to specifically provide that a policy provision or condition in violation of the section shall be void. *See* Okla.Stat. tit. 36, § 3615; Okla.Stat. tit. 36, § 3617. This Court declines to engraft upon Section 3610 language imposing a drastic sanction which the Oklahoma legislature knew how to use and did not. *Accord Rishel v. Pacific Mutual Life Insurance Company of California,* 78 F.2d 881, 883 (10th Cir.1935) (Court would not imply drastic remedy of voiding policy issued in violation of Colorado statute providing that no policy of insurance shall be delivered until the form has been filed with the Insurance Commissioner and authorizing a suspension of the certificate of authority of any company violating such provision).

Moreover, the Court notes that the Arizona statute from which Section 3610 is

---

FDIC suits, is that the exclusion is directed to those losses *and* losses from claims against directors or officers made by the FDIC in actions brought by it.

3. A contract is to be considered as a whole without narrowly concentrating upon some clause or language taken out of context. *Mercury Investment Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985). It is noted that all of the special endorsements to the two policies in question which are partly pre-printed forms and partly typewritten contain in the pre-printed portion an introductory clause that ends with the language "based upon or attributable to" after which the type of claim sought to be excluded is typed in. *See* Endorsement No. 1, 1983 Policy; Endorsements Nos. 10, 11 & 12, 1984 Policy. To the extent any ambiguity is created by language in the introductory, pre-printed clause when used in conjunction with the typed portion of the endorsement, the typewritten language must control. *See* Okla.Stat. tit. 15, § 166 & 167; *United States ex rel. Bach-*

man & Keffer Construction Co. v. H.G. Cozad Co., 324 F.2d 617, 619 (10th Cir.1963) (particular clauses of a contract, persuasive in isolation, are not deemed controlling when violative of the general intent of the parties expressed in the contract as a whole); *Great American Insurance Co. v. Watts,* 393 P.2d 236, 240 (Okla.1964) (typewritten portions control over printed portions of a contract).

4. The Oklahoma State Board for Property and Casualty Insurance apparently approved in 1985 a regulatory exclusion endorsement similar or identical in form to that herein submitted by another insurer. *See* Exhibit "9" to ACCO's Response to the FDIC's Motion for Summary Judgment.

5. Section 3610 was amended in 1987, subsequent to issuance of the policies and endorsements herein. Policy forms, riders and endorsements are now required to be filed with the Insurance Commissioner. *See* Okla.Stat. tit. 36, § 3610(A) (1987).

derived, A.R.S. § 20–1110, also does not expressly provide that endorsements delivered or issued in violation of that statute are void and that the Arizona Supreme Court has interpreted the predecessor of that statute as leaving a policy issued in violation of the filing requirement enforceable as issued but subjecting the issuer to a fine. *See Southern Casualty Co. v. Hughes,* 33 Ariz. 206, 263 P. 584, 586 (1928).

The Oklahoma Supreme Court has not had occasion to consider whether insurance application forms, policies, or endorsements not filed with the state insurance board or commissioner are enforceable. But in *Roark v. Shelter Mutual Insurance Co.,* 731 P.2d 389 (Okla.1986), that court reversed the trial court's exclusion from evidence of an unfiled insurance application form. The court's statement that it was not persuaded that exclusion from evidence was the legislature's intent as to the proper punishment for noncompliance with Okla. Stat. tit. 36, § 3610 and its citation to *Southern Casualty Co. v. Hughes,* 33 Ariz. 206, 263 P. 584, 586 (1928) suggest that the Oklahoma Supreme Court would hold, if confronted with the issue, that failure to file an endorsement with the state board or commissioner does not render the endorsement void but subjects the issuer to a regulatory sanction imposed by the board or commissioner. Such a holding would be consistent with the weight of authority from other jurisdictions. *See Great Lakes Container Corp. v. National Union Fire Insurance Co.,* 727 F.2d 30 (1st Cir.1984); *McCullough Transfer Co. v. Virginia Surety Co.,* 213 F.2d 440 (6th Cir.1954); *Elston v. Shell Oil Co.,* 376 F.Supp. 968 (E.D.La.1973), *aff'd,* 495 F.2d 1371 (5th Cir. 1974); *Equity Mutual Insurance Co. v. Allstate Insurance Co.,* 190 Neb. 515, 209 N.W.2d 592 (1973); *Franklin v. St. Paul Fire & Marine Insurance Co.,* 534 S.W.2d 661 (Tenn.App.1975). *Contra Miller v. National Farmers Union Property and Casualty Co.,* 470 F.2d 700, 704 (8th Cir.1972); *International Insurance Co. v. McMullan,* No. J84–0760(W), slip op. (S.D.Miss. Mar. 7, 1990); Order, *International Insurance Co. v. Love,* No. CIV–86–649–A (W.D. Okla. Feb. 10, 1987); *American Mutual Fire Insurance Co. v. Illingworth,* 213 So.2d 747 (Fla.App.1968).

■ This Court is unpersuaded by the FDIC's argument and authorities that enforcement of the regulatory exclusion would violate public policy embodied in federal statutes and common law relating to the FDIC's duties and rights. After enumerating the functions of the FDIC in relation to failed banks and those whose interests the FDIC represents as a receiver of a failed bank the FDIC argues:

> Consequently, there is a strong public policy that the FDIC, as receiver, have all the rights and claims that the failed bank would have had, as well as the rights of shareholders and creditors of the bank who could have instituted litigation to recover losses caused by bank management. Enforcement of an insurance policy provision by which the insured and insurer purport to bargain away the rights, powers or interests of the federal agency charged with statutory responsibility for the regulation and liquidation of the insured bank would violate public policy because it would impair the agency's performance of its duties.

Brief in Support of FDIC's Motion for Summary Judgment at pp. 55–56.

The FDIC's argument that public policy dictates that it have all the rights and claims that the failed bank would have misses the mark because the "Insured vs Insured" exclusion in the 1983 policy and Endorsement No. 10 in the 1984 policy exclude coverage for losses in connection with any claim against an officer or director made by the bank. *See infra.* Secondly, the FDIC's argument appears to be predicated on the rights and duties of the FDIC *as receiver* and the representative capacity in which the FDIC *as receiver* acts. In this case, the FDIC is acting in its corporate capacity, having purchased the claims against the bank directors and officers from the FDIC as Liquidating Agent for a closed state-chartered bank. When the FDIC in its corporate capacity prosecutes such claims, the depositors, creditors

and stockholders of the failed bank are not affected by any recovery or failure to recover by the FDIC. *See Federal Deposit Insurance Corp. v. Bank of Boulder*, 865 F.2d 1134, 1137 (10th Cir.1988), *aff'd on rehearing en banc*, 911 F.2d 1466 (10th Cir.1990). Thirdly, if exclusions such as the regulatory exclusion herein "would so seriously hamper ... [the federal agency] in carrying out its duties that public policy prevents" enforcement, *Federal Savings & Loan Insurance Corp. v. Oldenburg*, 671 F.Supp. 720, 724 (D.Utah 1987); *see Branning v. CNA Insurance Companies*, 721 F.Supp. 1180, 1184 (W.D.Wash.1989); *FSLIC v. Mmahat*, No. 86–5160, slip op. (E.D.La. Mar. 3, 1988) (1988 WL 19304), then a bank's failure to obtain directors' and officers' liability insurance would also violate public policy to the same extent because in that instance the FDIC would also have to look solely to the assets of the directors and officers to collect any judgment against them for breach of their statutory and common law duties. Yet there is no statutory or regulatory requirement that a bank such as Security Bank obtain or maintain officers' and directors' liability insurance. *See* Okla.Stat. tit. 6, § 713 (re-

quiring fidelity bonds for indemnity for losses as a result of any dishonest, fraudulent or criminal conduct of active bank officers and employees and other insurance against burglary, robbery or theft); 12 U.S.C. § 1828(e) (FDIC *may* require insured bank to obtain fidelity bond). When directors' and officers' liability insurance is not required by statute, such that complete failure to obtain such insurance cannot be contrary to public policy, and there is no mandated form of coverage if coverage is obtained, certainly directors' and officers' liability insurance policies providing only limited coverage such as those herein are not contrary to public policy. *Accord Continental Casualty Co. v. Allen*, 710 F.Supp. at 1099; *Simons v. City of Columbus*, 593 F.Supp. 876, 880–81 (N.D.Miss. 1984), *aff'd*, 805 F.2d 1031 (5th Cir.1986). *See also Federal Deposit Insurance Corp. v. Aetna Casualty and Surety Co.*, 903 F.2d 1073, 1077–79 (6th Cir.1990) (blanket bond policy providing that bond terminates upon a receiver or other liquidator's taking over of the insured was not contrary to public policy because such a policy was not required by statute and no particular form of coverage was mandated).[6]

**6.** Section 1821(e)(12)(A) of Title 12 of the United States Code now provides that the conservator or receiver of a federally insured depository institution may enforce any contract other than a directors' and officers' liability insurance contract or depository institution bond entered into by the institution notwithstanding any provision therein providing for termination upon or because of insolvency or appointment of a conservator or receiver. See Pub.L. 101–73, §. 212, 103 Stat. 183, 240 (effective August 9, 1989) (amending 12 U.S.C. § 1821). That Section further provides in subparagraph B that subparagraph A may not be construed to impair or affect the conservator or receiver's right to enforce or recover under a directors' or officers' liability insurance contract or depository institution bond under other applicable law. 12 U.S.C. § 1821(e)(12)(B).

ACCO argues that Section 1821(e)(12)(A) reflects public policy against allowing avoidance of provisions in a directors' and officers' liability policy like the "regulatory exclusion" involved herein. The FDIC argues that Congress was aware that a majority of courts which have considered provisions in contracts which provide that coverage terminates upon appointment of a receiver have found such provisions to be contrary to public policy and therefore unenforceable, citing H.R.Rep. No. 54(I), 101st

Cong., 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 127, 212–13, and that in enacting Section 1821(e)(12)(A), Congress intended to preserve such existing law.

Section 1821(e)(12), as amended, which was made applicable to the FDIC in its corporate capacity, see 12 U.S.C. § 1823(d)(3)(A), as amended by Pub.L. 101–73, § 217(4), 103 Stat. 183, 256, was not in effect at the time the policies and endorsements at issue in this case were issued. Moreover, it is questionable whether the type of coverage exclusion in the "regulatory exclusion," which does not provide for termination of all coverage upon insolvency or appointment of a receiver, is embraced by Section 1821(e)(12). Finally, at the time it enacted Section 1821(e)(12), Congress was also aware that a minority of courts had held that provisions in directors' and officers' liability policies excluding coverage for suits brought by the FDIC or FSLIC or terminating coverage upon appointment of a receiver were not contrary to public policy. *See* H.R.Rep. No. 54(I), 101st Cong., 1st Sess., *reprinted in* 1989 U.S. Code Cong. & Admin.News 86, 127, 212–13. Thus, it is clear that Congress intended that the courts continue to determine whether directors' and officers' liability insurance provisions excluding coverage upon appointment of a receiv-

The "Insured vs Insured" exclusion in the 1983 policy unambiguously excludes coverage for losses based on or attributable to, i.e. resulting from, any claim made against any director or officer by the bank. The endorsement specifically refers to any such claim made "by the Institution defined in Clause 1(a) of the Policy." Endorsement No. 2, 1983 Policy. Paragraph 1(a) of the policy defines the term "bank" to mean the bank named in the Declaration and any subsidiary. 1983 Policy ¶ 1(a). Since a bank is an "Institution" and the endorsement specifically refers to the "Institution defined in Clause 1(a) of the Policy" the only possible meaning that can be ascribed to the phrase "Institution defined in Clause 1(a) of the Policy" is the bank. However, Endorsement No. 3 in turn amends the policy by deleting the term "bank" wherever it appears and substituting the term "Corporation." Thus the term "Institution" as used in Endorsement No. 2 refers to the Corporation "and any Subsidiary defined in Clause 1(f)." 1983 Policy at ¶ 1(a). Endorsement No. 4 amends Clause 1(f) of the policy, defining "Subsidiary" to include "Security Bank & Trust Company."

The FDIC admits that its claims against Security Bank's officers and directors, including those reduced to judgment, for which it seeks coverage under the D & O policies, are assets of the bank which the FDIC in its corporate capacity purchased from the FDIC as Liquidating Agent. *See* Amended Complaint, Case No. CIV–89–1359–R, at ¶ 3; FDIC's Complaint in Intervention at ¶ 4; Statement of Undisputed Material Facts at ¶ 2, Brief in Support of FDIC's Motion for Summary Judgment at p. 3. Accordingly, the FDIC is standing in the shoes of the bank in prosecuting these claims. As such, the "Insured vs. Insured" exclusion in the 1983 policy applies to the FDIC's claims and precludes D & O insurance coverage therefor.

The Court agrees with Judge Pfaelzer of the United States District Court for the Central District of California who, in rejecting the officers' and directors' argument that an exclusion nearly identical to that herein was ambiguous because it did not specifically refer to claims or suits brought by the FSLIC, said:

> [The insurer's] position is that [the FSLIC suit] ... falls squarely within the [insured v. insured] exclusion. The Court finds this reading of the exclusion to be both natural and reasonable. FSLIC, in its suit, has asserted claims belonging to [the bank]. These claims would not be covered under the policy if asserted by [the bank]; it is difficult to argue that they should be covered when asserted on behalf of [the bank] by its receiver.

*Mt. Hawley Insurance Co. v. Federal Savings & Loan Insurance Corp.*, 695 F.Supp. 469, 481 (C.D.Cal.1987). *Accord Levy v. National Union Fire Insurance Co.*, 889 F.2d 433 (2nd Cir.1989); *American Casualty Co. of Reading, Pa. v. Federal Deposit Insurance Corp.*, 677 F.Supp. at 604. *Cf. American Casualty Co. of Reading, Pa. v. Federal Savings & Loan Insurance Corp.*, 704 F.Supp. 898, 901 (E.D.Ark.1989) (finding that insurer's position that Insured vs Insured Endorsement applied to the FSLIC "is logical and does not require a strained reading of the policy," but ultimately concluding that the endorsement was ambiguous as to whether it applied to the FSLIC and that the ambiguity had to be resolved in favor of coverage).

The FDIC argues that because the FDIC performs many functions and represents not only a failed bank and its shareholders, but also its depositors, creditors, the deposit insurance fund and the public at large, either the exclusion does not apply to it or at a minimum, it is ambiguous as to whether the exclusion applies to its claims. If there is an ambiguity, the FDIC asserts, that ambiguity must be resolved by a narrow construction of the endorsement. To support its argument the FDIC cites *Federal Deposit Insurance Corporation v. Na-*

er or for claims brought by the FDIC would be contrary to public policy or not under pre-existing law.

*tional Union Fire Insurance Co.,* 630 F.Supp. 1149 (W.D.La.1986); *American Casualty Co. of Reading, Pa. v. Federal Savings & Loan Insurance Corp.,* 704 F.Supp. 898; and *Branning v. CNA Insurance Companies,* 721 F.Supp. 1180.

In the three cases cited by the FDIC, the courts concluded that an exclusion identical or similar to the "Insured vs Insured" exclusion was ambiguous or that it did not apply to the FSLIC. Critical to each court's conclusion that the exclusion was ambiguous with respect to whether or not it applied to claims or suit brought by the FDIC or FSLIC was the premise that the federal agency's claims were not brought merely in the capacity of the successor to a failed financial institution but were brought for the benefit of depositors and creditors of the failed institution and for the benefit of itself as a creditor. In *Federal Deposit Insurance Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pa.,* the court likened the FDIC's posture insofar as it is suing to recoup its own losses or insofar as it represents the failed bank's depositors and other creditors to that of a "third party, rather than standing in the bank's shoes." 630 F.Supp. at 1157.

The problem with those courts' premise is that regardless of to whom the benefits of any recovery on a D & O policy by the FDIC or the FSLIC might indirectly or ultimately inure[7], their claims are claims of the financial institution which they acquired after failure of such financial institution by succession or purchase and are thus asserted in the capacity of assignee of the failed financial institution. Indeed, there is no reason that a creditor of a failed bank who claimed that he was damaged by a wrongful act of a director or officer of the bank could not prosecute his own claim against the director or officer and obtain payment for such claim or judgment from the insurer.

In any event, regardless of whom the FDIC *may* represent and to whom the benefits of any claims asserted by it may in-

ure, it is clear that in this case the FDIC is seeking a determination of coverage for claims previously owned by the bank and that the FDIC in its corporate capacity may assert them only because the FDIC as Liquidating Agent succeeded to the rights and assets of the bank and sold these particular rights or assets—claims against the bank directors and officers—to the FDIC in its corporate capacity. In its Amended Complaint in *Federal Deposit Insurance Corp. v. Barker,* Case No. CIV–88–1359–R, the FDIC, after reciting its purchase of certain bank assets, including claims against the bank's directors and officers, Amended Complaint at ¶ 3, alleges that Defendant directors and officers breached their implied contractual obligations *to the bank,* resulting in losses to the bank, *id.* at ¶¶ 19–21; breached their fiduciary duties *to the bank,* causing the bank to sustain losses, *id.* at ¶¶ 23–25; breached their duty of due care owed *to the bank,* directly causing losses to the bank, *id.* at ¶¶ 27–29; and that the Defendant directors are personally liable for loans made by the bank in violation of the bank's legal lending limit while Defendants were bank directors, *id.* at ¶¶ 31–32. These allegations belie the assertion that the FDIC's claims for which a determination of insurance coverage is sought herein are claims asserted on behalf of creditors or depositors. *Accord American Casualty Co. of Reading, Pa. v. Federal Deposit Insurance Corp.,* 677 F.Supp. 600, 604 (N.D.Ia.1987) (FDIC's own pleading refutes argument that the corporate FDIC is not suing as the bank or its assignee but as a third-party creditor).

The FDIC also argues that the "Insured vs Insured" exclusion is unenforceable because its application to the FDIC's claims and judgment would violate public policy, citing *FSLIC v. Mmahat,* No. 86–5160, slip op. (E.D.La. Mar. 3, 1988). The reasons cited above for this Court's refusal to void the "regulatory exclusion" as applied to the FDIC's claims even more compellingly require the Court to reject the FDIC's public policy-based argument for nonenforce-

---

7. Indeed, any recovery by the FDIC in its corporate capacity on claims it purchased from itself as Liquidating Agent would not inure to the benefit of the failed bank's depositors, creditors or shareholders. *See Federal Deposit Insurance Corp. v. Bank of Boulder,* 865 F.2d at 1137.

ment of the "Insured vs Insured" exclusion.

Coverage for the FDIC's claims is also precluded as a matter of law under the 1984 policy by virtue of the exclusion in clause 3 of Endorsement No. 10. As explained above in connection with the "Insured vs Insured" exclusion in the 1983 policy, the FDIC's claims for which it seeks a determination of coverage are the claims of the bank, asserted by the FDIC in its corporate capacity as assignee of those claims, standing in the shoes of the bank. See above. The "Institution defined in Clause 1(A)" of the 1984 policy is the "Corporation", see Endorsement No. 13, and "any Subsidiary as defined in Clause 1(f)," which includes Security Bank and Trust Company, see Endorsement No. 6. Application of this exclusion to the FDIC's claims does not violate public policy for the same reasons that application of the "regulatory exclusion" in the 1983 and 1984 policies and application of the "Insured vs Insured" exclusion in the 1983 policy to the FDIC's claims does not violate public policy.

The original Plaintiffs and certain individual Intervenors argue that material fact questions exist concerning whether enforcement of the exclusions herein would violate the reasonable expectations of the insureds, precluding summary judgment. But the Oklahoma Supreme Court has never adopted the "reasonable expectations doctrine," see, e.g., Farm Bureau Mutual Insurance Co. v. Sandbulte, 302 N.W.2d 104 (Ia.1981); C & J Fertilizer, Inc. v. Allied Mutual Insurance Co., 227 N.W.2d 169 (Ia.1975), and, in this Court's opinion, would not adopt it. The Oklahoma Supreme Court has steadfastly adhered to the principle that it will not undertake to rewrite an insurance contract on terms more favorable to the insured than what is expressed therein. See, e.g., Wiley v. Travelers Insurance Co., 534 P.2d at 1295. Even if the Oklahoma Supreme Court were to adopt the doctrine, the Court is convinced that it would not apply it in this case. The officers and directors of the bank who obtained the policies were not unversed in insurance provisions, unlikely to read or

incapable of understanding the policies and exclusionary endorsements. Moreover, Plaintiffs and Intervenors have submitted no evidence showing or from which it could be inferred that the exclusions eviscerate terms explicitly agreed to, one of the essential elements of the "reasonable expectations doctrine." See Farm Bureau Mutual Insurance Co. v. Sandbulte, 302 N.W.2d at 112.

In accordance with the foregoing, the FDIC's motion for summary judgment on its Complaint is DENIED and Defendant ACCO's motion for summary judgment directed to the FDIC's, original Plaintiffs' and the individual Intervenors' claims for insurance coverage and breach of contract (FDIC's Supplemental Complaint in Intervention, First and Second Claims; Plaintiffs' Second Amended Complaint, Counts I & II; Intervenor R.F. Lee's Second Amended Complaint, Counts I & II; and Petition in Intervention of Defendants Jerry W. Barker, Jess R. Porter and Warren H. Porter) is GRANTED.

■ ACCO's motion for summary judgment is also directed to the original Plaintiffs' and individual Intervenors' claims for bad faith, i.e., breach of the duty of good faith and fair dealing or a tortious bad faith breach of contract. See Second Amended Complaint at Count IV; Second Amended Complaint in Intervention of R.F. Lee at Count IV; Petition for Intervention of Jerry Barker, Jess Porter and Warren H. Porter at ¶ 6, incorporating Count IV of Plaintiffs' Complaint. In that claim the Plaintiffs and Intervenors allege that ACCO ignored their demands upon ACCO for defense and indemnification, see Second Amended Complaint at ¶ 18; refused to acknowledge coverage of the FDIC's claims under the 1983 and 1984 policies, see id. at ¶ 20; refused to pay the costs of defending those claims, see id; waived or is estopped to assert any policy defense and failed to comply with Oklahoma Statutes regarding issuance of policies and endorsements and processing of claims, see id. at ¶ 26; failed to give its insureds 30 days advance notice of refusal to renew the 1983 policy, see id. at ¶ 30; and misrepresented

that the 1984 policy was a "renewal" of the 1983 policy, *see id.*

In support of its motion directed to the bad faith claims, ACCO asserts that because there is case law which supports its positions herein, including that there is no insurance coverage for any loss resulting from the FDIC's claims under either the 1983 or the 1984 policies, *see* above, ACCO's denial of coverage was reasonable and not in bad faith as a matter of law. ACCO cites, *inter alia, Harris v. Farmers Insurance Co.*, 607 F.Supp. 92 (W.D.Okla. 1985); *Duckett v. Allstate Insurance Co.*, 606 F.Supp. 728 (W.D.Okla.1984); and *State Farm Fire & Casualty Co. v. Balmer*, 891 F.2d 874 (11th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 263, 112 L.Ed.2d 220 (1990), to support its argument that resort to a judicial forum is not bad faith where there is an arguably lawful basis for denying coverage but is reasonable as a matter of law. Additionally, ACCO asserts that it had no duty to reimburse the Plaintiff and Intervenor directors and officers for defense costs on an "as incurred" basis because there is a legitimate dispute as to whether there is coverage for such "losses" under the policies, citing *Bank of Commerce and Trust Co. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 651 F.Supp. 474, 476–77 (N.D.Okla.1986). Finally, ACCO asserts that the Plaintiffs and Intervenors have not pleaded and cannot allege any damages as a result of an alleged bad faith breach which would entitle them to punitive damages.

In response to ACCO's motion, the original Plaintiffs, whose response has been adopted by the individual Intervenors with the exception of Intervenor R.F. Lee, submit substantial evidence that ACCO engaged in a regular practice of "renewing" D & O policies on substantially different terms to prevent its insureds, including Plaintiffs, from exercising their option to purchase extended discovery coverage under existing policies having terms more favorable to the insureds than the proffered renewal policies; and that in this instance, ACCO offered to "renew" the insureds' 1983 policy on terms substantially less favorable without informing them that the proffered 1984 policy was a refusal to renew the 1983 policy and without informing them of their right to purchase extended discoverage coverage under the 1983 policy under these circumstances. Plaintiffs and Intervenors assert that this evidence supports a claim against ACCO for breach of the implied covenant of good faith and fair dealing or for the tort of bad faith. Assuming, however, that this is true, Plaintiffs and Intervenors have failed to allege or submit any evidence showing how they have been damaged as a result. Plaintiffs allege in their Second Amended Complaint that ACCO's conduct deprived its insureds of its contractual benefits, including their right to give notice of potential claims prior to the effective date of termination of the 1983 policy and to purchase extended discovery period coverage on the same terms and conditions as those in the expiring policy, *see* Second Amended Complaint at ¶ 30, *see* also Second Amended Complaint of Intervenor R.F. Lee at ¶ 30; Petition for Intervention of Jerry W. Barker, Jess R. Porter and Warren H. Porter, but assuming that Defendant ACCO had not so acted and that Plaintiffs *had* exercised the rights or options of which they claim ACCO deprived them, Plaintiffs would be in no better position because exclusions in the 1983 policy preclude coverage for any "loss which the directors and officers ... become legally obligated to pay," 1983 D & O Policy at ¶ (a); 1984 D & O Policy at ¶ (a), including any "damages, judgments, settlements, costs and defense of legal actions." *Id.* at ¶ 1(d); *id.* at ¶ 1(d). The "regulatory exclusion" and the "Insured vs Insured" exclusion in the 1983 policy quoted above provide that the insurer "shall not be liable to make any payment for Loss" as described therein. The term "Loss" as used in the endorsement must be given the meaning ascribed to that term in the definitions section of the policy, and thus includes claims, judgments, settlements and the costs of defense of legal actions. Accordingly, Plaintiffs and the individual Intervenors have not alleged, cannot allege, and have failed to submit evidence of any damages they have sustained as a result of

Defendant ACCO's alleged bad faith in failing to give the insureds notice of its refusal to renew and in failing to inform the insureds of their rights upon a refusal to renew. Damages are a necessary element of any cause of action and absent actual damages, a claim for punitive damages for an insurer's bad faith will not lie. *Cf. Norman's Heritage Real Estate Co. v. Aetna Casualty & Surety Co.*, 727 F.2d 911, 914 (10th Cir.1984) (at least nominal compensatory damages are necessary to support award of punitive damages).

■ The existence of the regulatory exclusion in both policies, the "Insured vs Insured" exclusion in the 1983 policy and Endorsement No. 10 in the 1984 policy also preclude as a matter of law Plaintiffs' and the individual Intervenors' bad faith claims predicated on ACCO's alleged denial of coverage, refusal to settle the FDIC's claims against Plaintiffs and Intervenors and refusal to defend those claims or pay defense costs. The existence of the exclusions provided ACCO with legally arguable and, in this case, legally effective, defenses to coverage and any liability for any loss which the Plaintiffs and Intervenors were or could become legally obligated to pay, *including* "damages, judgments, settlements, costs and defense of legal actions." 1983 D & O Policy at ¶ 1(d); 1984 D & O Policy at ¶ 1(d).

"Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit." *Christian v. American Home Assurance Co.*, 577 P.2d 899, 905 (Okla. 1978). The essence of the tort of bad faith is "the insurer's unreasonable, bad faith conduct, including the unjustified withholding of payment due under a policy." *McCorkle v. Great Atlantic Insurance Co.*, 637 P.2d 583, 587 (Okla.1981). The reasonableness of an insurer's conduct in denying coverage, refusing to settle or defend or to pay defense costs must be assessed in light of law applicable at the time of the denial or refusal, *see Timmons v. Royal Globe Insurance Co.*, 653 P.2d 907, 914 (Okla.1982); *see also Harris v. Farmers Insurance Co.*, 607 F.Supp. 92, 95–6 (W.D.Okla.1985); *Duckett v. Allstate In-*

*surance Co.*, 606 F.Supp. 728, 731 (W.D. Okla.1984), and the policy provisions.

Prior to this Order, there was no controlling authority on the enforceability of an endorsement not filed as required by Okla. Stat. tit. 36, § 3610(A) under Oklahoma law nor was there any definitive controlling authority in this jurisdiction on the applicability or enforceability of the exclusions addressed herein to the Federal Deposit Insurance corporation in its corporate capacity. Indeed, the decisions from other jurisdictions on each of these issues are conflicting. There was a legitimate dispute as to the enforceability of the exclusions in relation to the FDIC's claims and hence as to coverage of those claims. Moreover, because the exclusions related to any "loss", which by definition under the policies included settlements, costs, and defense of legal actions, there was a legitimate dispute as to whether ACCO had any obligation to settle the FDIC's claims or pay the Plaintiffs' and Intervenors' defense costs or defend on their behalf. Because of the existence of these legitimate disputes, Defendant ACCO had a right to have them settled in a judicial forum and its alleged denial of coverage, refusal to settle and refusal to defend or pay defense costs do not admit to a permissible inference of unreasonableness or bad faith. *Accord Manis v. Hartford Fire Insurance Co.*, 681 P.2d 760, 762 (Okla.1984). *See also Harris v. Farmers Insurance Co.*, 607 F.Supp. at 96; *Duckett v. Allstate Insurance Co.*, 606 F.Supp. at 731. In view of the Court's rulings herein on the lack of ambiguity and enforceability of the exclusions, Defendant ACCO's alleged ·denial of coverage, refusal to settle and refusal to defend or pay defense costs was reasonable as a matter of law.

■ In their brief in response to defendant ACCO's motion for summary judgment, the original Plaintiffs state:

As the Gary Plaintiffs set forth in their Second Amended Complaint filed herein, ACCO's conduct as described above also constitutes common law fraud.

Gary Plaintiffs' Brief in Opposition to Motion for Summary Judgment of American Casualty Company of Reading, Pa. at p. 34.

They further argue that if ACCO's conduct does not amount to actual fraud, it at the very least constitutes constructive fraud. *Id.* at p. 35. However, a review of the original Plaintiffs' Second Amended Complaint shows not only that they have not included a fraud cause of action in their specifically enumerated and labelled counts, but that the only elements of a claim for actual fraud which the Plaintiffs have arguably alleged are a misrepresentation (that the 1984 policy was a renewal policy) and an intent to deceive. *See* Second Amended Complaint at ¶ 30. Similarly, the only elements of a constructive fraud cause of action that they have arguably alleged are a duty and a misrepresentation. But assuming for purposes of this motion, that the original Plaintiffs have adequately alleged fraud and constructive fraud, Defendant ACCO is entitled to summary judgment on these claims for the same reason it urged and is entitled to summary judgment on the bad faith claim predicated on its offer of the 1984 policy as a renewal policy, failure to inform the insureds that the 1984 policy constituted a refusal to renew and failure to inform the insureds of their rights to give notice of claims and to purchase extended discovery period coverage. Plaintiffs have not alleged and have not and cannot allege any damages resulting from the alleged fraud, actual or constructive, because there is no coverage for the FDIC's claims under the 1983 policy due to the exclusions contained therein.

■ In response to ACCO's motion directed to the bad faith claim, the original Plaintiffs also have submitted evidence that Defendant ACCO *ignored* Plaintiffs' counsel's requests that ACCO pay for the costs of defending the FDIC action, pay for any loss which the directors might become obligated to pay and state its position concerning coverage and *ignored* Plaintiffs' counsel's demand that ACCO settle the FDIC's claims against his clients. Reasonable jurors could find from this evidence that Defendant ACCO breached its duty to deal fairly with its insureds. *See generally, Christian v. American Home Assurance Co.*, 577 P.2d at 903–4 (obligation of an insurance company is not for the payment of money only but to pay promptly upon receipt of proper proof of loss or defend in good faith and deal fairly with its insured). And while exclusions in the policies preclude damages in the form of defense or settlement costs or payment for any judgment obtained against Plaintiffs by the FDIC, Plaintiffs allege that they have suffered emotional distress as a result of Defendant ACCO's refusal to respond to Plaintiffs' requests. Second Amended Complaint at ¶ 25. Defendant ACCO's challenge to Plaintiffs' *allegation of* or *ability to allege any actual damages* does not require that Plaintiffs submit any proof of emotional distress damages, which are recoverable in a tort claim for an insurer's bad faith. *See Timmons v. Royal Globe Insurance Co.*, 653 P.2d at 916; *Christian v. American Home Assurance Co.*, 577 P.2d at 902 & 904–5. Thus, Defendant ACCO's motion for summary judgment directed to the original Plaintiffs' bad faith claim, to the extent that claim is predicated on Defendant ACCO's *disregard* of Plaintiffs' requests to pay defense costs, settle, state ACCO's position concerning coverage, and pay any losses the Plaintiffs became legally obligated to pay, is DENIED. Moreover, because ACCO's motion directed to the bad faith claims of Plaintiffs and the individual Intervenors is predicated on the reasonableness of its conduct in *denying* coverage for any "loss", and does not challenge Plaintiffs' and Intervenors' ability to prove a bad faith claim based upon ACCO's alleged complete disregard of Plaintiffs' and the individual Intervenors' requests and demands, Defendant ACCO's motion directed to Plaintiffs' and the individual Intervenors' bad faith claims, to the extent those claims are based on such conduct of ACCO, is DENIED. In all other respects, Defendant ACCO's motion directed to Plaintiffs' and the individual Intervenors' bad faith claims is GRANTED.

## CONCLUSION

The motion of Defendant American Casualty Company of Reading, Pa. for summary judgment on the Complaint in Intervention of the Federal Deposit Insurance Corporation is GRANTED. Intervenor Federal Deposit Insurance Corporation's cross motion

for summary judgment on its complaint is DENIED. The motions for partial summary judgment of Plaintiffs Joe F. Gary, Donald G. Barker, Joe L. Gary, Arnold G. Nelson and Tom Padgham and of Intervenors R.F. Lee, Jess Porter and Warren H. Porter on their claims for declaratory judgments and breach of contract are DENIED. Defendant American Casualty Company's motion for summary judgment on Plaintiffs' and the individual Intervenors' complaints and petition is GRANTED with respect to Plaintiffs' and the individual Intervenors' claims for declaratory judgments, breach of contract and bad faith, to the extent the bad faith claims are predicated on misrepresentation that the 1984 policy was a renewal of the 1983 policy, failure to give the insureds notice of a refusal to renew and to inform the insureds of their rights upon a constructive refusal to renew, denial of coverage and refusal to settle, defend and pay defense costs. In all other respects, Defendant American Casualty Company's motion for summary judgment on Plaintiffs' and the individual Intervenors' complaints and petition is DENIED.

IT IS SO ORDERED.