**Josie LOPEZ, Administratrix of the Estate of Raymond Lopez, Deceased, Appellant (Plaintiff below),**

**v.**

**Mike ARRYO and Javier Arryo, Appellees (Defendants below).**

**No. 3981.**

Supreme Court of Wyoming.

Oct. 19, 1971.

Thomas A. Fennell, Cheyenne, for appellant.

Alfred M. Pence, of Pence & Millett, Laramie, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

The appellant sued under the wrongful death statute for damages arising out of the death of her decedent who was killed when decedent's motorcycle collided with a vehicle driven by defendant Javier Arryo. Mike Arryo, father of Javier, was joined as a defendant, apparently on the theory that Javier was his agent.

It seems to be undisputed that the vehicle driven by Javier belonged to another person and that it was being driven with the owner's consent. The attorneys on both sides of the controversy deem it necessary for us to know that both the owner of the vehicle and the driver, Javier Arryo, carried liability insurance.

For purposes of our decision, we can say it is represented to us without dispute that Phoenix Assurance Company carried the insurance on the car itself and had primary coverage. Farmers Insurance Group had insured the driver, Javier Arryo, and it had only excess insurance or secondary coverage.

The only defense to the suit of decedent's administratrix was interposed by Farmers. It set forth as an affirmative defense that Josie Lopez, administratrix, had executed an instrument for Phoenix which was entitled RESTRICTIVE COVENANT NOT TO EXECUTE. Farmers' attorney claims this instrument constituted a complete release of all liability on the part of defendants and therefore plaintiff cannot sue.

The district court accepted the defense theory thus advanced and granted summary judgment, holding in effect there was no issue to be determined by a trial of the case on its merits. The plaintiff-administratrix has appealed.

■ Although the instrument executed for Phoenix by the administratrix could have been more clear and explicit, we find, when it is construed as a whole (and it must be so construed), it fairly well accomplishes what the title suggests and nothing more. In other words, it is a restrictive covenant not to execute and not an unconditional release as contended by Farmers' attorney.

The Restrictive Covenant Not To Execute was signed by Josie Lopez only. It recites that it is an agreement by and between Josie Lopez, administratrix, and Phoenix Assurance Company, acting for and on behalf of Javier Arryo, its insured. The provisions pertinent to our consideration are these:

"IT IS AGREED for the consideration of $9,000.00, the receipt of which is hereby irrevocably acknowledged, that the undersigned Administratrix duly appointed and acting in a representative capacity, hereby covenants and accepts the said sum as a partial payment for damages to the estate but as full payment of the entire contract obligation imposed upon the Phoenix Assurance Company as the prime insurance carrier on the Preston automobile.

"The right to pursue and to litigate, if necessary, the cause of action pursuant to Wyoming Compiled Statute, 1–1065, is hereby expressly reserved against Javier Arryo, and Mike Arryo, it being understood that the above mentioned payment shall reduce, to the extent of payment, all damages recoverable or which may be adjudged in favor of the undersigned against Javier Arryo, and/or Mike Arryo.

"It being the intent of the undersigned to release Javier Arryo and Mike Arryo to the full extent of their personal assets and to the full extent of the coverage, including the defense of any action, afforded them under the [Phoenix] contract and reserving the right to pursue Javier Arryo and/or Mike Arryo for further damages, the payment of such damages being the obligation of any excess liability insurance company con-

tracts, which may have application to the aforesaid accident."

Whether summary judgment was properly entered must be determined entirely from an analysis of the foregoing instrument. Decisions made in other cases will not be very helpful. Also, there seems to be no dispute of facts which have a bearing on our interpretation of the restrictive covenant.

In Clayton Oil Company v. Shidler, Wyo., 473 P.2d 593, 594, we reiterated two recognized principles in contract construction which had application in that case and which are equally important to bear in mind in the instant case. They are:

1. "The fundamental canon of construction applicable to contracts generally is the ascertainment of the intention of the parties."

2. "A contract must be construed as a whole, and every part must be read in light of other parts."

With the foregoing principles of construction being kept in mind, we proceed to analyze the instrument under consideration, taking it paragraph by paragraph.

The paragraph which recites a consideration of $9,000 also recites such consideration is accepted as a "partial payment" for damages to the decedent's estate and as full payment of Phoenix's obligation. It refers to Phoenix as the *prime* insurance carrier on the owner's automobile.

The next paragraph to be discussed in the restrictive covenant expressly states that the right of the administratrix to pursue and litigate her cause of action pursuant to Wyoming's wrongful death statute "is hereby expressly reserved" against Javier Arryo and Mike Arryo. Recognition was then given to the fact that the amount paid by Phoenix would have to be credited on the total of all damages which might be adjudged in favor of plaintiff and against the defendants.

The language of this paragraph clearly negatives any idea of an intent on the part of Josie Lopez to release the defendants

from liability. Indeed, the expression of a contrary intent is so explicit and clear that it must be considered in connection with any doubtful language elsewhere in the agreement.

We have indicated previously that the covenant not to execute is less than perfect and in fact undesirable. In particular, questions have been raised relative to the meaning of the last paragraph which we set out above. Counsel for appellant has explained that plaintiff and defendants are in fact good friends. Such a situation may explain why this paragraph was included. If the plaintiff had merely agreed not to execute against Phoenix in connection with any judgment obtained by her, the covenant would probably have caused no problem.

Nevertheless, when we consider the title given to the instrument and all the provisions thereof as a whole, we can only conclude the plaintiff's intent was to agree (in the paragraph we are speaking of) that she would not execute either against the personal assets of the Arryos or against Phoenix, in connection with any judgment obtained by her.

Even within the walls of this last quoted paragraph alone, we find the intent we have expressed made quite clear. If we were to read only the portion which states, "It being the intent of the undersigned to release Javier Arryo and Mike Arryo to the full extent of their personal assets and to the full extent of the [Phoenix] coverage," there might be some doubts. However, the paragraph continues with this decisive language:

"* * * and reserving the right to pursue Javier Arryo and/or Mike Arryo for further damages, the payment of such damages being the obligation of any excess liability insurance company contracts, which may have application to the aforesaid accident."

Thus, it is made clear in the agreement as a whole and also in the last quoted paragraph, when it is taken as a whole, that Josie Lopez intended to agree she would

not execute against personal assets of the Arryos or against Phoenix under its insurance contract; *however*, that the administratrix was reserving the right to pursue the Arryos for further damages insofar as excess liability insurance may be applicable.

On behalf of appellees it is argued that, if the insured is relieved of his obligation to pay, then the insurer is also relieved. We do not, however, construe the instrument here involved as a release of the defendants from their liability for damages.

The authorities cited by counsel for appellees seem to deal primarily with agreements not to sue. We are concerned with an agreement not to execute. Even with respect to agreements not to sue, counsel seeks to rely on the distinction made in Casper National Bank v. Jones, 79 Wyo. 38, 329 P.2d 1077, 1081, wherein it was held to be well settled that a covenant not to sue one joint tortfeasor does not discharge the others. The court agreed, however, that a covenant not to sue the one *primarily* liable will release those *secondarily* liable.

It is agreed by counsel on both sides of the controversy that the limit of liability coverage, under the Phoenix policy, is $10,000. Therefore, if the coverage of Farmers is only for excess insurance, it would be liable only for damages in excess of other valid and collectible insurance. This means Farmers would have no obligation to pay for damages except for damages in excess of $10,000 rather than in excess of $9,000.

That being the case, it becomes apparent the result is in keeping with the principle recognized in the *Casper National Bank* case because there is no primary and secondary liability involved with respect to damages in excess of $10,000.

Our interpretation of the covenant not to execute in no way prejudices Farmers. That insurance company is obligated under its own insurance contract to pay for all damages in excess of $10,000.00, up to the limit of its coverage. Also, this obligation comes ahead of any obligation out of the personal assets of the company's insured. Any different interpretation would give Farmers a windfall it is not entitled to.

### Obligation to Defend

Counsel for defendants argues that Phoenix, by virtue of having the primary coverage, also has the obligation to defend all suits such as the one here involved; and that Phoenix cannot escape this obligation to defend and pass such obligation on to Farmers which has only excess coverage.

Although the policies are not in the record, except for a copy of a small portion of the policy of Farmers, we can assume counsel for defendants is correct in saying Phoenix has the obligation to defend. We say this because it is not denied by appellant and because such is the usual situation in liability insurance policies.

■ Insofar as appellant may have attempted to release Phoenix from its obligation to defend by use of the phrase "including the defense of any action," nothing was accomplished. The phrase obviously has no legal effect or validity because Josie Lopez could never be a beneficiary under Phoenix's agreement to defend. Such agreement is to defend against her and not for her.

Our finding is that the administratrix has not waived all causes of action against the defendants. However, before the issues of negligence, contributory negligence, and amount of damages are tried to a jury, the trial judge must first determine who is obligated to defend; and he must see that the company obligated has made reasonable and proper arrangements to furnish or pay for a bona fide and not a mere token defense. In the event this necessitates Phoenix being brought in as a party to the suit for the particular purpose of deciding preliminary questions pertaining to defendants' defense, that will have to be done.

Remanded for further proceedings consistent with the views herein expressed.