AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Plaintiff,

v.

The FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver for FirstSouth, F.A.; Thomas R. Kennedy; Roger E. Yanow; Howard J. Weichern, Jr.; Del L. Brannon; James B. Hatcher; G. Tim Massanelli; Gerald E. Powell; Henry F. Trotter, Jr.; William S. Watson; Wilbur C. West; Douglas H. Lowrey; B.W. Chaffin; Joel W. Cheatham; Gene D. Davis; John H. Kelly; Michael P. Murphy; H. Kenneth Reed; Roderick D. Reed; and Ned P. Euseppi, Defendants.

No. LR–C–88–597.

United States District Court, E.D. Arkansas, W.D.

Jan. 3, 1989.

James B. Davidson, Lise K. Jacobson, Omer G. Poirier, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., and Stephen W. Jones, Donald T. Jack, Jack, Lyon & Jones, P.A., Little Rock, Ark., for plaintiff.

Williams & Anderson, Phil S. Williams, Little Rock, Ark.

Russell E. Marsh, F. Thomas Hecht, Hopkins & Sutter, Chicago, Ill., Wes Cherry, Peter B. Heister, Eichenbaum Law Firm, H. William Allen, Little Rock, Ark., John K. Villa, Williams & Connolly, Washington, D.C., Joel Taylor, Little Rock, Ark., Terry F. Wynne, Bridges Law Firm, Pine Bluff, Ark., Thomas B. Staley, Robinson, Staley & Marshall, John R. Clayton, Wallace, Dover & Dixon, Mike Mitchell, Mitchell & Roachell, Little Rock, Ark., Bradley D. Jesson, Hardin, Jesson & Dawson, Ft. Smith, Ark., Larry Burks, Friday, Eldredge & Clark, and H. Lawrence Yancey, Yancey & Nichols, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

HENRY WOODS, District Judge.

Pending now are the cross-motions for summary judgment of the plaintiff, American Casualty Company of Reading, Pennsylvania (American), and the defendants, the Federal Savings and Loan Insurance Corporation, as Receiver for FirstSouth, F.A. (FSLIC), and several former officers and directors of FirstSouth. American brought this action seeking a judgment declaring that it is not liable to the former officers and directors of FirstSouth, under a Directors' and Officers' Liability Insurance Policy issued to FirstSouth, for losses and expenses incurred in connection with three lawsuits brought by the FSLIC against the former officers and directors. For the reasons that follow, American's motion is denied and summary judgment is granted in favor of the defendants.

## BACKGROUND

American issued a Directors' and Officers' Liability Insurance Policy to First-South, F.A., a federally chartered and insured stock savings and loan association, effective from November 17, 1985 to November 17, 1986. The policy insured the individual officers and directors of First-South against losses they become obligated to pay as the result of certain "wrongful acts" committed in the discharge of their duties. The policy also insured FirstSouth against loss for which it was required to, or had lawfully indemnified its officers and directors. "Wrongful Act" was defined in the policy to include misstatement, misleading statement or neglect or breach of duty by the officers and directors in the discharge of their duties.

On December 4, 1986 FirstSouth was declared by the Federal Home Loan Bank Board to be insolvent and, on that same day, the FSLIC was appointed the sole receiver of FirstSouth by the FHLBB. FirstSouth's failure, as could be expected, spawned a wave of litigation. Three lawsuits brought by the FSLIC, as receiver, against FirstSouth's former officers and directors are at issue here.[1] In the "Officer and Director" suit, the FSLIC, as receiver, seeks judgment of not less than 150

---

1. *FSLIC v. Roderick D. Reed, Debtor,* No. PB–86–450 (Bktcy, E.D.Ark.); *FSLIC v. George S. Watson. et al,* No. LR–C–87–806 (E.D.Ark.); and *FSLIC v. Weichern, et al,* No. LR–C–87–302 (E.D. Ark.).

million dollars against the former officers and directors for breach of their fiduciary duties to FirstSouth. A similar suit was filed against defendant R. Reed in the bankruptcy court and will be tried primarily on the record produced in the officer and director suit. The FSLIC, as receiver, has also sued defendant Weichern, former Chairman of the Board and Chief Executive Officer of FirstSouth, together with First-South's two largest shareholders, alleging liability of $279 million for RICO violations, fraud and breach of fiduciary duty.

American filed its complaint in this action seeking a declaration that the D & O policy described above affords no coverage for the former officers and directors with respect to the FSLIC lawsuits. Its claim is based on two endorsements attached to the policy and referred to herein respectively as the "Insured vs. Insured" exclusion and the "Regulatory" exclusion. All parties agree that interpretation of the D & O policy is governed by Arkansas law.

DISCUSSION

The law applicable to this case is straightforward, contrary to the impression one would get from reading the parties' briefs. In Arkansas, contracts of insurance are construed according to general contract principles. *Allstate Insurance Co. v. USF & G*, 663 F.Supp. 548, 553 (W.D.Ark.1987). Legal effect must be determined by considering the language of the entire policy and the object sought to be accomplished thereby. *Continental Casualty Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971); *Pate v. USF & G*, 14 Ark.App. 133, 685 S.W.2d 530 (1985); *Kramer Grocery Co., Inc. v. Glens Falls Ins. Co.*, 497 F.2d 709 (8th Cir.1974) (Arkansas Law). The terms used are to be given their common, plain ordinary and popular meaning. *CNA Insurance Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984).

If, applying these principles, there is but one interpretation possible, it is the court's duty to construe the policy according to the plain import of its language. *Wilson v. Countryside Casualty Co.*, 5 Ark.App. 202, 634 S.W.2d 398 (1982); *Allstate Insur-*

*ance Co. v. Johnson's Estate*, 539 F.Supp. 421 (W.D.Ark.1982) (Arkansas Law). But, if a provision is susceptible to more than one equally reasonable construction, one which would justify recovery and one which would not, the ambiguity must be interpreted in favor of the insured. *Drummond Citizens Insurance Co. v. Sergeant*, 266 Ark. 611, 588 S.W.2d 419 (1979). Any intent to exclude coverage should be expressed in clear, unambiguous and unmistakable language. *Milwaukee Insurance Company v. Wade*, 238 Ark. 565, 383 S.W. 2d 105 (1964); *Union Bankers Insurance Co. v. National Bank of Commerce of Pine Bluff*, 241 Ark. 554, 408 S.W.2d 898 (1966).

A. Insured vs. Insured Endorsement

█ Endorsement nine (9) to the D & O policy, captioned "Insured vs. Insured," provides that:

> It is understood and agreed that the Insurer shall not be liable to make any payment for loss, as defined in Clause 1(d) hereof, which is based upon or attributable to any claim made against any Director or Officer by any Director or Officer or by the Institution defined in Clause 1(a) of the policy (hereinafter called "Institution"), except for a shareholder's derivative action brought by a shareholder of the Institution other than an Insured.

American claims that the FSLIC, as receiver, stands in the shoes of FirstSouth, for purposes of the actions against the former officers and directors which are at issue here, because it acquired all claims and causes of action which FirstSouth had against the officers and directors and brought the underlying actions "for the benefit of FirstSouth." *See* 12 U.S.C. § 1789(b). Since an action brought by FirstSouth against its own officers and directors would have been expressly excluded from coverage by the Insured vs. Insured endorsement, American argues that suits brought by the FSLIC, as receiver, asserting FirstSouth's cause of action are also excluded.

American correctly states that there are only three categories of insureds under the policy—directors, officers and the institution. But, even though shareholders are not named insureds, shareholders' derivative actions are expressly excepted from the Insured vs. Insured exclusion. This exception is necessary, American explains, because shareholders can only assert the institution's cause of action whether they sue in their own name or not. Therefore, were they not excepted from the Insured vs. Insured endorsement, they would otherwise be excluded from coverage by it. By analogy, American would have the court find that, since the FSLIC also asserts the institution's cause of action, and since the FSLIC is not excepted from the endorsement, actions brought by the FSLIC are excluded from coverage.

In support of their contrary position that the Insured vs. Insured endorsement does not exclude coverage for actions brought by the FSLIC, the defendants make a number of arguments. They maintain that the FSLIC is not just an ordinary assignee of, or a mere successor in interest to First-South because of the FSLIC's unique mandate to bring "all actions, suits or legal proceedings" "in which the receiver, institution or its creditors or members or any of them shall have an interest." *See* 12 C.F.R. § 569a.6(a)(3). Since the FSLIC brought the underlying actions not only for the benefit of FirstSouth, but also for the benefit of its depositors and creditors, the defendants conclude that the FSLIC represents more than just the interests of the insured "institution." Thus, the defendants argue, FSLIC suits are not excluded from coverage by the Insured vs. Insured endorsement because the FSLIC represents uninsured depositors and creditors whose actions would not be excluded.

Additionally, the defendants assert that the Insured vs. Insured endorsement, by its own terms, does not exclude actions brought by the FSLIC. They note that FirstSouth is the only "Institution" or "Association" referred to in the policy and that nowhere in the endorsement is there a reference to the FSLIC, the FHLBB or any other governmental or regulatory agency.

Nor is there any reference in the endorsement to successors, assigns, trustees or receivers. It is the defendants' position that if American had intended to include the FSLIC within the definition of "insured" for the purpose of the endorsement, it could have done so expressly but, since it did not, the endorsement does not apply to the FSLIC or, at the very least, whether it applies to the FSLIC is ambiguous.

Construing the policy as a whole, the court finds that the "Institution" or "Association" which the Insured vs. Insured endorsement purports to exclude is susceptible to more than one reasonable interpretation. American's position is logical and does not require a strained reading of the policy. Yet, the stated purpose of the policy is to insure the officers and directors against loss from claims made for breach of duty. This purpose would be entirely defeated or very severely restricted if suits brought by the FSLIC were not covered. Therefore, it would not be unreasonable for such a broad exclusion, if intended, to be stated expressly. Obviously, American was aware of the FSLIC's role because the FSLIC was referred to by name in endorsement 19, discussed below.

Moreover, because the FSLIC is required to marshall the assets of a failed institution for the benefit of its depositors and creditors and to minimize payouts from the insurance fund, it is motivated to bring suit by interests distinctly different from that of an institution which has remained solvent. Significantly, American's supplemental exhibit A(A) states that it is not the FHLBB's policy to base its decisions to take legal actions against officers and directors on the existence of adequate insurance—as would be likely in suits brought by one officer or director against another. And, when the FSLIC does sue, it is entitled to procedural and substantive advantages not available to the insured institution or the officers and directors. *E.g. North Mississippi Savings and Loan Ass'n v. Hudspeth*, 756 F.2d 1096 (5th Cir. 1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986) (claims and counterclaims against FSLIC, receiver, must be

submitted to administrative claims procedure with federal court jurisdiction limited to Administrative Procedures Act review); *Dill v. FSLIC,* 678 F.Supp. 1404 (E.D.Ark. 1988) (*"D'Oench, Duhme"* doctrine by which a party is estopped from asserting "side agreements" as a defense to a facially valid note in hands of receiver applies to FSLIC actions).

These circumstances, together with the fact that the FSLIC was expressly referred to in endorsement 19 but not in this endorsement, make the defendants' interpretation of the Insured vs. Insured endorsement entirely reasonable. As noted, the FSLIC is in a fundamentally different posture from that of the solvent institution, it was not defined as an insured and it was not referred to in the Insured vs. Insured endorsement. Thus, the case can be made that there was no intent expressed or implied in the Insured vs. Insured endorsement to exclude suits brought by the FSLIC from coverage under the policy.

As set forth above, when the court is faced with an ambiguous provision, the ambiguity must be construed against the insurer. Since the defendants' interpretation of the policy is reasonable and since that interpretation justifies recovery under the policy, it is that interpretation which must be adopted by the court. Therefore, the court finds that endorsement nine (9) to the policy at issue, referred to herein as the Insured vs. Insured endorsement, does not exclude coverage under the policy for actions brought by the FSLIC, as receiver for FirstSouth, against the former officers and directors of FirstSouth.

B. Regulatory Endorsement

█ Endorsement nineteen (19) to the D & O policy is referred to as the "regulatory exclusion." The endorsement was drafted by an American employee specifically for FirstSouth and was typed directly from handwritten notes. As a result, the clause is not a model of clarity and precision and it does not track the language of similar endorsements which have been subjected to judicial scrutiny. The endorsement, as it appears in the D & O policy, provides that:

It is understood and agreed that the insurer shall not be liable to make payment for loss in connection with any claim made against the insured (as defined in the Policy) based upon or attributable to: any action or proceeding resulting from violation of any laws, regulations, lending or reporting policy as promulgated by the Federal Savings and Loan Corporation [sic], Comptroller of the Currency, the Federal Home Loan Bank Bond (sic), or any other national or state regulatory agency (all of said organizations hereinafter refused [sic] to as "Agencies"), whether such action or proceeding is brought in the name of said Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

The question presented here is what is intended by the phrase "based upon or attributable to . . . any action or proceeding resulting from violation of any laws [or] regulations." American's position is, naturally, one which gives the quoted language its broadest effect by focusing on the conduct which gives rise to an action or proceeding. If the officers' or directors' conduct giving rise to a claim violates any law or regulation, American argues, then regardless of what the resulting action is labeled there is no coverage under the policy. Under this interpretation the underlying actions for the common law tort or breach of fiduciary duty would not be covered under the policy because the conduct which constitutes the breach also potentially violates a virtual laundry list of federal regulations.[2]

2. American annotated FSLIC's complaints in the underlying actions to show that the conduct alleged violated nearly every proscription enumerated in 12 C.F.R. §§ 545 et seq. Examples are prohibited transactions with affiliated persons; exceeding loan to one borrower's limits; improperly underwriting loans; exceeding brokered deposit limits; making undersecured loans; exceeding compensation limits for officers and directors; improperly concentrating loans; engaging in deceptive practices; failing to supervise; violating regulator's agreements; failing to require borrower equity and engaging in a scheme to defraud.

The defendants, on the other hand, maintain that the exclusion refers expressly to an "action" or "proceeding" which results from violations of laws or regulations—not to actions or proceedings based on conduct violative of same. This interpretation significantly narrows the scope of the exclusion to actions brought by a regulatory agency to enforce compliance with, or to exact civil penalties for the violation of laws and regulations. They argue that the actions underlying this suit do not result from regulatory violations, for which there is no cause of action for damages, but rather arise from fiduciary duties imposed by state tort law—defined as an insured "wrongful act" in Clause 1(e) of the policy. They emphasize that the question in the underlying actions is not whether the directors violated any federal regulations, it is whether they had a fiduciary duty to prevent those violations if, indeed, they occurred.[3]

The court finds the defendants' interpretation to be the more reasonable of the two. Nearly every imaginable breach of fiduciary duty, which American agreed to insure against, would involve conduct that would violate one or more federal regulations. For example, American has cited 12 C.F.R. § 563.17(a) numerous times for the proposition that FSLIC's claims against the defendant officers and directors result from regulatory violations. That section requires savings and loan associations to "maintain safe and sound management" and to pursue safe financial policies. Essentially, § 563.17(a) is a codification of the fiduciary standard. It is preposterous to suggest that any institution would pay a substantial premium for a policy to insure against loss resulting from breach of fiduciary duty, but which at the same time excludes coverage for claims resulting from conduct inconsistent with the fiduciary standard.[4] This court will not construe an exclusion so broadly as to eviscerate the policy.[5] *See Perkins v. Clinton State Bank*, 593 F.2d 327 (8th Cir.1979) (Arkansas law) (policy should not be construed to provide coverage for defined loss and then simultaneously construed to defeat coverage because of the operative circumstances surrounding the same loss). The regula-

---

**3.** *See FSLIC v. Capozzi,* 855 F.2d 1319 (8th Cir. 1988) (no civil cause of action for damages for officers' and directors' violation of federal savings and loan regulations) *relying in part on, FSLIC v. Ticktin,* 832 F.2d 1438, 1446 (7th Cir. 1987) ("alleged violations of federal law are subsidiary questions to the ultimate question in the case: whether the directors, under state law, breached their fiduciary duties"). In reaching its decision the *Capozzi* court noted that the federal regulations are "forward looking" to forestall insolvency, not to provide recompense after it has occurred.

**4.** American also relies on 12 C.F.R. § 541.121(d) which prohibits savings and loan associations from procuring insurance for "payment of losses of any person incurred as a consequence of his willful or criminal misconduct." American's reliance is misplaced, however, because it has not invoked Clause 3(a)(5) of the policy which excludes coverage for "dishonest" acts. Contrary to the requirement in the dishonesty exclusion that "actual or deliberate" dishonesty be established by a judgment or other final adjudicative act, American attempts to void the policy under § 541.121(d) upon mere allegations of dishonesty without the required proof. Moreover, American has not invoked the proviso to Clause 1(d) of the policy which states that a covered "loss" does not include matters uninsurable under applicable law. Therefore, hav-

ing argued neither that the directors and officers acted "dishonestly" as defined in the policy or that liability arising from the underlying actions is not a covered "loss" within the policy, American is in no position to argue that public policy prohibits coverage based on the directors' and officers' alleged conduct. The court does note, however, that American has not waived its right to rely on these provisions following trial of the underlying actions.

**5.** American maintains that its interpretation of the regulatory exclusion would not eviscerate the policy because day-to-day exposure to liability from employment-related actions, breach of contract actions, actions for negligent handling of accounts and deposits, and lender liability actions would still be covered. The court disagrees. Employment discrimination is prohibited by federal law, labor law is federally regulated and nearly every facet of lending and deposit handling is regulated by state or federal law. Additionally, lender liability actions routinely allege conduct in violation of truth-in-lending and other regulations. Given the fact that the endorsement purports to exclude actions resulting from violation of *any* laws or regulations promulgated by *any* federal or state regulatory agency whether brought by the agency or *solely in the name of a third party*, the expansive scope urged by American would, indeed, render the policy meaningless.

**904**

tory endorsement is, at best, ambiguous and it does not exclude coverage for actions brought by the FSLIC, as receiver, against the former officers and directors of FirstSouth for breach of fiduciary duty.

CONCLUSION

The court finds that there are no genuine issues of material fact in dispute and that the defendants are entitled to judgment as a matter of law declaring that endorsements nine (9) and nineteen (19) to the D & O policy at issue do not exclude coverage for claims asserted by the FSLIC in actions underlying this suit. Accordingly, the defendants' motions for summary judgment are granted and American's motion for summary judgment is denied.

IT IS SO ORDERED.