**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a Pennsylvania corporation, Defendant.**

No. 90–CV–0265–J.

United States District Court,
D. Wyoming.

July 3, 1991.

Patrick R. Day, Anne McGihon, Jack Englert, Jr., Holland & Hart, Cheyenne, WY, Charles R. Jaeger, Holland & Hart, Denver, CO, for plaintiff.

Richard P. Boley, William McKellar, Boley and McKellar, P.C., Cheyenne, WY, Michael P. Tone, Michael J. Rosen, Anne Fiedler, Peterson & Ross, Chicago, IL, for defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter came regularly before the Court on 17 April 1991 for hearing on the parties' 25 March 1991 cross motions for summary judgment. Having reviewed the pleadings on file and the arguments of counsel, and being fully advised in the premises, the Court FINDS and ORDERS as follows.

### FACTS

On 9 December 1983, MGIC Indemnity Corporation, predecessor-in-interest to the defendant herein, issued a Directors and Officers Liability Insurance Policy to Platte Valley Bancorporation, Inc., the holding company of the Saratoga State Bank. The policy period was extended through 2 January 1985 by the amendment of endorsement no. 12 on 9 December 1984. The policy was a "claims made" policy under which American Casualty Company [American Casualty or ACCO], agreed to pay losses which the directors and

officers of the bank became legally obligated to pay as a result of their negligence or breach of fiduciary duty.

The policy issued to the bank included several riders and endorsements, two of which are subjects of this litigation. Endorsement No. 1 [the "regulatory" endorsement] is an exclusion for "claim[s] made against the Directors or Officers based upon or attributable to . . . any action brought by or on behalf of the Federal Deposition Insurance Corporation." Endorsement No. 2 [the "insured v. insured" endorsement] excludes coverage when losses arise from any suit maintained against a director or officer by any other director, officer or the bank. Further, payment under the policy was subject to a $10,000 deductible per loss. "Loss" is defined in the policy.

The bank became insolvent and was voluntarily closed on 11 October 1985, and the Wyoming State Examiner appointed the FDIC receiver at that time. The FDIC, in its corporate capacity, thereafter accepted assignment of certain of the bank's assets, including all claims that the bank and its shareholders had against its directors and officers. On 11 October 1988, the FDIC filed suit against George W. McIlvaine [McIlvaine], the bank's president, alleging that he had breached his statutory and fiduciary duties to the bank. McIlvaine was an insured under the policy here at issue. FDIC and McIlvaine ultimately entered into a settlement agreement which provided that McIlvaine was legally obligated to pay the FDIC $925,000. Under the agreement, McIlvaine paid $20,000 to the FDIC, must pay any salary or commissions which are earned by him during 1989, 1990 and 1991 to the extent that such exceed $100,000, and assigned to the FDIC all of his rights under the ACCO policy. To date, McIlvaine has made no additional payments under the agreement.

The immediate action was filed by the FDIC on 9 October 1990, seeking declaratory judgment regarding the coverage of the policy and contending that ACCO acted in bad faith in failing to admit liability under the policy, delaying and withholding payment under the policy and refusing to settle the underlying suit within policy limits. In its reply to the response of American Casualty to their motion for partial summary judgment, FDIC has also asserted that American Casualty is bound by the broader policy coverage of the initial policy issued to the bank, because the renewal contract was issued without calling attention to the more limited coverage. This "constructive nonrenewal" theory was not addressed by these motions.

American Casualty has moved for summary judgment, contending initially that endorsements 1 and 2 to the policy unambiguously exclude coverage for the D & O lawsuit. Alternatively, ACCO claims that McIlvaine's "loss" is limited to the amount of money which he will actually be required to pay. Finally, ACCO contends that FDIC cannot establish a prima facie claim for breach of the implied covenant of good faith.

FDIC has moved for partial summary judgment on American Casualty's affirmative defenses, arguing that, as a matter of law, the regulatory and insured v. insured exclusions cannot be interpreted or enforced as ACCO contends.

## DISCUSSION

██ When the coverage of an insurance policy is at issue, the court applies established rules of interpretation and construction to examine the policy language. *St. Paul Fire and Marine Insurance Co. v. Albany County School Dist. No. 1,* 763 P.2d 1255, 1258 (Wyo.1988). In Wyoming, an insurance policy is a contract. *State Farm and Fire Casualty Co. v. Paulson,* 756 P.2d 764, 765 (Wyo.1988). "A contract is ambiguous if it is obscure in its meaning because of indefiniteness of expression or because of a double meaning being present," *Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595, 599 (Wyo. 1989), and whether a contract is ambiguous or not is a question of law to be determined by the trial court. *Braun v. Okla. Gas & Elec.,* 603 F.2d 132, 133 (10th Cir.1979). Summary judgment is appropriate on the contract only if the Court determines that the insurance contract is unambiguous. *Gomez v. American Elec. Power Serv. Corp.,* 726 F.2d 649 (10th Cir.1984); *Ricci v. New Hampshire Ins. Co.,* 721 P.2d 1081, 1085 (Wyo.1986).

### 1. The Regulatory Endorsement.

■ American Casualty contends that the "regulatory endorsement" included in the insurance policy at issue excludes from coverage suits brought by the FDIC or other regulatory agencies. Endorsement #1 of the insurance policy issued to the Saratoga State Bank reads in part:

> It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to
>
> any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation. . . .

The FDIC posits three arguments concerning this exclusion: (1) the exclusion applies only to "secondary suits"; (2) the exclusion is, at best, ambiguous; and (3) enforcement of the exclusion as ACCO interprets it would violate public policy. The Court finds none of these arguments compelling.

It is reasonable to interpret the exclusion to preclude claims which may arise from secondary suits. However, the natural and unstrained reading of this endorsement, while it does indeed preclude secondary suit claims, also on its face precludes recovery for *any* claims brought by the FDIC or other specified regulatory agencies. The only reasonable construction of that phrase is the one which the FDIC initially suggests, that the endorsement be limited solely to secondary suits. The FDIC has succeeded in its action against McIlvaine, and now seeks to assert a claim against the insurance policy *based upon* that action. Admittedly, the use of the phrases "based upon or attributable to" in conjunction with "any action or proceeding brought by or on behalf of" the FDIC may be cumbersome, but it does not change the Court's perception that:

> [r]eading the endorsement as a whole, without placing undue emphasis on the words "based upon or attributable to," it is clear that the insured's intent was to exclude coverage for any loss resulting from any action brought by or on behalf of the FDIC in any capacity against a bank director or officer.

*Gary v. American Cas. Co. of Reading, Pa.,* 753 F.Supp. 1547, 1550–51 (D.Okla.1990).

The majority of the courts who have addressed this question have agreed.[1] *See, Am. Cas. Co. of Reading Pa. v. Baker,* 758 F.Supp. 1340, 1347 (C.D.Cal.1991) ("[ACCO's] reading of the regulatory exclusion is both natural and reasonable. There is no ambiguity to the language of the clause. . . . Only the 'secondary suit' limitation, . . . creates strain on the contractual provision in issue."); *Powell v. American Cas. Co. of Reading, Pa.,* 772 F.Supp. 1188 (W.D.Okla.1991) ("This language is clear and unambiguous."); *American Cas. Co. of Reading, Pa. v. F.D.I.C.,* Civil No. 86–4018, 1990

---

[1]. Contrary to the representation made to the Court by the FDIC, the courts who have addressed this precise issue have more often than not concluded that the language in identical or very similar exclusions is unambiguous. After reviewing all of the cases presented by each side on the issue, the Court finds that six have found the exclusion unambiguous, two have concluded that it is ambiguous, and the remaining ten did not address the issue, or discussed an endorsement which was materially different than that at issue here.

In *American Cas. Co. of Reading, Pa. v. F.D.I.C.,* 677 F.Supp. 600 (D.Iowa 1987), the court concluded that the exclusion was ambiguous, as the interpretation that the exclusion applies only to secondary suits was reasonable. In the same case, however, that court reversed its findings. *American Cas. Co. of Reading, Pa. v. F.D.I.C.,* Civil No. 86–4018, 1990 WL 66505 (D.Iowa, Feb. 26, 1990). Although the reversal came after a bench trial on the merits, the court

did not entertain any extrinsic evidence in determining that the plain language of the endorsement was not ambiguous.

In finding ambiguity in the same exclusion, the court in *FSLIC v. Mmahat,* Civil Action No. 86–5160, 1988 WL 19304 (E.D.La., March 3, 1988), relied exclusively on the first of the Iowa district court's decisions.

Finally, of the courts which did not address the issue, at least one, the United States District Court for the District of Washington in *Branning v. CNA Ins. Companies,* 721 F.Supp. 1180 (D.Wash.1989), found that "[i]f the court were to endorse the FSLIC exclusion as written, all of FSLIC's claims, regardless of their origin or status under the policy, would not be covered simply because FSLIC . . . prosecuted the claim." *Id.* at 1184. Though that court plainly found that the endorsement language, "as written," excluded recovery on actions taken by regulatory agencies, it chose not to enforce it as against public policy.

WL 66505 (D.Iowa, Feb. 26, 1990) ("[T]he exclusion clearly excludes claims by FDIC and is not ambiguous."); *Gary,* 753 F.Supp. at 1551; *Continental Cas. Co. v. Allen,* 710 F.Supp. 1088, 1097 (D.Tex.1989) ("The contractual language of [the regulatory endorsement] clearly excludes claims by FDIC and *is not* ambiguous. The Court therefore adopts the obvious, reasonable interpretation.")[2]; *McCuen v. International Ins. Co.,* Civil No. 87–54–D–1, 1988 WL 242680 (S.D.Iowa, Sept. 20, 1988).

■ In interpreting the meaning of policy language, the Court should not interpret it so as to make any language superfluous. Nor should the Court overemphasize any one phrase to reach a strained interpretation. If the endorsement is read to exclude coverage for any suits brought by regulatory agencies or any suits attributable to suits brought by the same, none of its terms are superfluous. The Court will not, by emphasizing the phrase "based upon or attributable to," so narrowly construe the endorsement as to contort its obvious intent.

FDIC's public policy argument is discussed below.

### 2. The Insured v. Insured Endorsement.

■ American Casualty next contends that the "insured v. insured" endorsement included in the insurance contract excludes from coverage suits brought by the FDIC when it is acting "in the shoes" of the bank, one of the insured parties. Endorsement # 2 of the insurance policy at issue provides:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss, ... which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(a) of the Policy.

The FDIC argues that this exclusion is not enforceable against them for three reasons: (1) the endorsement, on its face, does not apply to claims made by an entity other than directors, officers or the Institution; (2) if the Court were to conclude that the policy language was ambiguous, it should be construed in favor of coverage; and (3) enforcement of the exclusion would violate public policy.

American Casualty contends ·that the claims brought by the FDIC in this action are claims belonging to the Bank, and that the FDIC may therefore only assert these claims to the extent that it "stands in the shoes" of the Bank. Because those claims belong to the Bank and are asserted against another insured, American Casualty argues, the insured v. insured endorsement excludes coverage for them by its terms.

The Court finds that the exclusion does not, by its terms, exclude coverage in this action, that the exclusion is ambiguous, and that it should therefore be construed in favor of coverage. The endorsement lists distinctly those persons and entities to whom it applies. This Court, like the district court in *Baker,* 758 F.Supp. at 1349–50, finds the reasoning in *Fidelity and Deposit Co. of Maryland v. Zandstra,* 756 F.Supp. 429 (N.D.Cal.1991) to be convincing and dispositive. In that case and this one, the FDIC argued that, because suits of the precise *type* excluded by the endorsement were nonetheless covered by the policy language if brought by persons not listed in the exclusion, i.e. shareholders in a derivative action, the endorsement was clearly meant to prevent suits by specific parties.[3] FDIC urged the court to "focus on the *identity* of the party asserting the claim, not on the *nature* of the cause of action." *Baker,* 758 F.Supp.

---

2. In *Baker,* 758 F.Supp. at 1344–45, the court suggested that the regulatory exclusion clause discussed in *Allen* was different, in that it did not include the language "based upon or attributable to." While this Court agrees that such an omission would be a significant difference, and would render the opinion of little guidance, a review of the file in *Allen* reveals that the endorsement did include the above language. The court merely omitted the prefatory language in its discussion.

3. The policy at issue here does not expressly except shareholder derivative suits from the endorsement, as do some of the policy endorsements considered in other decisions. The Court finds this of little significance, however. Just as in the policies discussed in the cited cases, a suit by shareholders, other than an Insured, clearly does not fall within the parameters of this endorsement.

at 1349. It is plain that a regulatory agency assuming the claims of the bank could have been included in the endorsement, just as each was specifically included in endorsement # 1. Had the insurer wanted to exclude actions against the directors or officers by a regulatory agency, "it was well within [its] power and knowledge to clearly indicate any intent to include within the 'insured v. insured' exclusion actions maintained by FDIC or FSLIC." *Zandstra*, 756 F.Supp. at 433, citing *American Cas. Co. of Reading, Pa. v. FSLIC*, 704 F.Supp. 898, 901 (E.D.Ark.1989).

Further, it is clear that the policy reasons for attaching such an endorsement do not apply in cases like the present. The potentiality which prompted the drafting of this exclusion, the directors and officers of the bank acting collusively and suing either themselves or the bank, does not exist once the FDIC has been appointed receiver. There is no dispute that the FDIC, as receiver, is a genuinely adverse party in this action. *See, Zandstra*, 756 F.Supp. at 432.

The Court also finds that the endorsement is ambiguous. The endorsement is subject to at least the two meanings ascribed to it by the parties. In *American Cas. Co. of Reading, Pa. v. FSLIC*, 704 F.Supp. at 901, the court, addressing a provision virtually identical to the one in this action, stated that:

> the "Institution" or "Association" which the Insured v. Insured endorsement purports to exclude is susceptible to more than one reasonable interpretation. American's position is logical and does not require a strained reading of the policy. Yet, the stated purpose of the policy is to insure the officers and directors against loss from claims made for breach of duty. This purpose would be entirely defeated or very severely restricted if suits brought by the FSLIC were not covered. Therefore it would not be unreasonable for such a broad exclusion, if intended, to be stated expressly. Obviously, American was aware of the FSLIC's role because the FSLIC was referred to by name in [another endorsement].

*Id.*

 If contract language is reasonably susceptible to a double meaning, the contract is ambiguous as a matter of law. *Farr v. Link*, 746 P.2d 431 (Wyo.1987). Language in a contract will be construed most strongly against the drafter if there is an ambiguity, and most strongly in favor of coverage. *Worthington v. State*, 598 P.2d 796, 806 (Wyo.1979).

Finally, the Court is not convinced that the FDIC, acting as receiver, is in the same position as the institution. In *FDIC v. National Union Fire Ins.*, 630 F.Supp. 1149 (W.D.La.1986), the district court addressed just such an argument, an concluded that the FDIC, and other agencies similarly situated, should only be subject to defenses which are clearly made applicable to them. The court reasoned that, while the FDIC steps into the shoes of the predecessor bank, it is nonetheless in the unique position of representing the interests of itself, shareholder, and all other creditors.

> Cases like *D'Oench [, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) ], *[FDIC v.] Gulf Life [Insurance Co.*, 737 F.2d 1513 (11th Cir.1984) ] and *Re Charter [Executive Center Ltd.*, 34 B.R. 131 (Bankr.M.D.Fla.1983) ] indicate that it is improper to conclude that the FDIC is like any other assignee bank subject to all defenses against its predecessor bank. The fact that the FDIC has been viewed traditionally in a different light than ordinary assignees, in more than the limited context of *D'Oench* and § 1823(e), alone makes it unclear whether endorsement to the insurance policy barring the predecessor bank's recovery on certain claims similarly bars the FDIC's recovery.

Moreover, the FDIC is clearly suing in a different capacity than would its predecessor bank. As the court recognized in *FDIC v. American Bank & Trust Shares, Inc.*, 460 F.Supp. 549, 561 (D.S.C.1978), unlike a bank suing its officers and directors, the FDIC represents not only the failed bank's shareholders, but also itself as a creditor, as well as its predecessor's other creditors. Therefore, insofar as the FDIC is suing to recoup its own losses, it is arguably like any other third party

bringing action against the insurer and the insured, ...

*National Union,* 630 F.Supp. at 1157.

The FDIC's role in acting as receiver is much more expansive than that of either director, officer or bank. The Court agrees that any policy provision which plainly includes it can provide a defense to liability. "When a policy provision is not clearly applicable to the FDIC, however, the agency should not be subject to the defense it allegedly provides." *Id.* at 1156.

Again, the weight of authority supports the Court's conclusion that this endorsement should not be read to exclude coverage in this type of action.[4] *See, Am. Cas. Co. of Reading, Pa. v. Baker,* 758 F.Supp. 1340, 1347 (C.D.Cal.1991); *Zandstra,* 756 F.Supp. at 433–34; *American Cas. Co. of Reading, Pa. v. F.D.I.C.,* Civil No. 86–4018, 1990 WL 66505 (N.D.Iowa, Feb. 26, 1990); *Branning v. CNA Ins. Companies,* 721 F.Supp. 1180 (W.D.Wash.1989); *Continental Cas. Co. v. Allen,* 710 F.Supp. 1088, 1097 (N.D.Tex. 1989); *American Cas. Co. of Reading, Pa. v. Federal S. & L.,* 704 F.Supp. 898 (E.D.Ark. 1989); *FSLIC v. Mmahat,* Civil Action No. 86–5160, 1988 WL 19304 (E.D.La., March 3, 1988) (finding that both the regulatory exclusion and the insured v. insured endorsement are ambiguous); *Federal Deposit Ins. v. National Union Fire Ins.,* 630 F.Supp. at 1156–57; *National Union Fire Ins. v. Federal Deposit Ins. Corp.,* No. Civ. 3–85–51, 1985 WL 6006 (E.D.Tenn., May 3, 1985).

*3. Public Policy.*

■ The FDIC next asserts that, whether the above exclusions are ambiguous or not, this Court should not enforce them. To do so, FDIC claims, would be against the clear mandate of public policy as directed by the Congress. Its argument is that, with the passage of the Financial Institutions, Reform, Recovery, and Enforcement Act of 1989 [FIRREA], the Congress gave to the FDIC "all rights, titles, powers, and privileges" of the shareholders and depositors of failed institutions, with respect to the assets

of those institutions. Among those rights is the assertion of derivative claims. FDIC argues that since these types of actions are not excluded from coverage by the policy, enforcement of the regulatory or insured v. insured exclusions which would exclude coverage of the same actions when brought by the FDIC, would "directly contravene the statutory provision" discussed above.

FDIC directs the Court to *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 42, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987) and *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983), establishing the authority of the Court to void a contract that is contrary to law or public policy. In *W.R. Grace,* the Court gave guidance for determining what public policy interests are adequate to void a private contract. The Court held that:

> [i]f [a] contract ... violates some explicit public policy, we are obliged to refrain from enforcing it. Such a public policy, however, must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interest."

*Id.* at 766, 103 S.Ct. at 2183, quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). The Court has examined the statutes and cases cited by the parties and finds that a public policy of the type urged by the FDIC is neither "well defined" nor "dominant."

Initially, the Court notes that no form of D & O insurance is required by statute or regulation. In *FDIC v. Aetna Cas. and Sur. Co.,* 903 F.2d 1073 (6th Cir.1990), the sixth circuit discussed an exclusion in a bond issued to a bank which provided coverage for losses caused by the dishonest acts of employees. The section at issue provided that the taking over of the insured by a regulatory agency would terminate the bond. The trial court held, and the FDIC subsequently argued, that such a termination provision

---

4. At the end of two exclusions, the score is: Ambiguous 9, Unambiguous 4. Five of the deci-

sions did not address these exclusions.

amounted to the "bargaining away of FDIC's statutory function upon being appointed receiver," by "preclud[ing] the FDIC from discharging its responsibility in connection with marshalling assets of the failed bank." *Id.* at 1077. The circuit court did not agree, finding that the FDIC had the statutory authority to require types and duration of insurance yet did not do so. To hold that the limited coverage policy which an insurer sold was no longer limited would force the insurer:

> to take on a risk for which it did not bargain. Insurance policies which have sections limiting coverage are not contrary to public policy where such policies are not required by statute where the form of coverage has not been mandated.

*Id.* at 1078, citing *Allen,* 710 F.Supp. at 1099.

This Court also finds the lack of any statutory or regulatory insurance requirements significant. As the district court reasoned in *Gary:*

> [I]f exclusions such as the regulatory exclusion herein "would so seriously hamper ... [the federal agency] in carrying out its duties that public policy prevents" enforcement, ... then a bank's failure to obtain directors' and officers' liability insurance would also violate public policy to the same extent because in that instance the FDIC would also have to look solely to the assets of the directors and officers to collect any judgment against them for breach of their statutory and common law duties. Yet there is no statutory or regulatory requirement that a bank such as Security Bank obtain or maintain officers' and directors' liability insurance.... When directors' and officers' liability insurance is not required by statute, such that complete failure to obtain such insurance cannot be contrary to public policy, and there is no mandated form of coverage if coverage is obtained, certainly directors' and officers' liability insurance policies providing only limited coverage such as those herein are not contrary to public policy.

753 F.Supp. at 1553. Congress has had the opportunity to tell the courts whether D & O liability policies are required, and if so, what is required of those policies. The FDIC also has the authority to require that an institu-tion obtain these policies, and the extent of coverage. Neither have chosen to do so. This Court cannot find that a limit in a nonrequired insurance policy is void any more than it can require a bank to purchase insurance. To hold otherwise would be to judicially impose upon financial institutions demands which neither the Congress nor its regulatory agencies have found necessary.

Further, the limitation in the insurance policy purchased by the bank does not affect the rights assumed by the FDIC. The FDIC still assumes all rights of the shareholders and creditors of the bank. The FDIC may maintain an action against the bank, its directors and officers, and, if successful in the action may obtain a judgment for the entire amount to which the shareholders or creditors may be entitled. None of those rights are hampered by the endorsements in the policy. That the endorsement would limit the amount of recovery in this situation only emphasizes the point that the insurance policy purchased by the bank is an asset of the bank. The endorsements in the insurance policy are limitations on the assets of the institution, directors and officers, and not on the rights or privileges of persons bringing suit against them. The Court is in no position, absent a clear Congressional edict, to require that the assets of a financial institution be of a certain amount or type.

At hearing, the FDIC stated that the lack of direction by the Congress remaining neutral is a very different from not stating an affirmative public policy. On the contrary, the Court finds that they are precisely the same. The direction by Congress that the courts decide the enforceability of D & O liability policies must not be taken as a directive to determine public policy. That is not the function of this Court. Rather, the Court need only decide whether the exclusions in the insurance policies are unambiguous and effective as drafted.

While the FDIC contends that the majority of courts addressing the exclusions have refused to enforce them, this analysis is misleading. In fact, a slight majority of courts who have discussed this issue have held that public policy considerations should not act to avoid enforcement of unambiguous exclu-

sions.[5] *See, FDIC v. Aetna Cas. and Sur. Co.,* 903 F.2d 1073 (6th Cir.1990); *Baker,* 758 F.Supp. at 1345–46; *American Cas. Co. of Reading, Pa. v. F.D.I.C.,* Civil No. 86–4018, 1990 WL 66505 (N.D.Iowa, Feb. 26, 1990); *Powell,* 772 F.Supp. 1188 (W.D.Okla.1991); *Allen,* 710 F.Supp. at 1099; *Gary,* 753 F.Supp. at 1553.

*4. Is the Recovery in this Action "Loss"?*

██ American Casualty contends that it is only liable for "loss" as defined in the policy, and that recovery against it for any amount which McIlvaine would not actually be required to pay is not included in that definition.

"Loss" is defined in the first section of the policy, and means:

> any amount which the Directors or Officers are legally obligated to pay ... for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include but not be limited to damages, judgments, settlements, costs (exclusive of salaries of officers or employees), and defense of legal actions, claims or proceedings and appeals therefrom, and costs of attachment or similar bonds,

> . . . . .

Pursuant to the settlement agreement negotiated between McIlvaine and the FDIC, McIlvaine was "legally obligated" to pay $925,000 to the FDIC. The agreement provides that McIlvaine pay $20,000 to the FDIC, pay any salary or commissions which are earned by him during 1989, 1990, and 1991 to the extent that such exceed $100,000, and assign to the FDIC all of his rights

under the ACCO policy, American Casualty contends that, because McIlvaine has not earned over $100,000 in either 1989 or 1990, and is unlikely to in 1991, the total of his obligation to the FDIC is $20,000. The term "loss," ACCO claims, is unambiguously defined in the policy and includes only in fact legal obligations. ACCO argues that, to the extent that the payments from McIlvaine to FDIC are contingent upon other, non-related events, they are not contemplated by the clear definition in the policy.

The FDIC contends that this issue is controlled by *Lopez v. Arryo,* 489 P.2d 626 (Wyo.1971). In *Arryo,* the plaintiff entered into a covenant not to execute against the personal assets of the defendants or their primary insurance carrier, in exchange for $2,000. The excess insurance carrier argued that such a release constituted a complete release of all liability on the part of the defendants, and that the plaintiff could therefore not sue them. The court held that such a release, with an express reservation of the right to sue the excess carrier, would not act as a release of the excess carrier. To do so, the court found, would be to give the excess carrier "a windfall it is not entitled to." *Id.* at 629.

The Court agrees that *Arryo* controls the disposition of this issue. The facts of the present case weigh even more heavily toward the plaintiff. No covenant not to execute against McIlvaine was ever entered into as part of the settlement. The settlement agreement states specifically that he is legally obligated to the FDIC for $925,000, and "loss" is that amount which the insured is legally obligated to pay, whether he ultimate-

---

5. There are a number of courts which have decided not to enforce one or both of these exclusions based on the public policy rationale. *See, International Insurance Co. v. McMullan,* Civil No. J84–0760(W), 1990 WL 483731 (S.D.Miss., March 7, 1990); *Branning,* 721 F.Supp. 1180; *Mmahat,* Civil Action No. 86–5160, 1988 WL 19304 (E.D.La., March 3, 1988); *FSLIC v. Oldenburg,* 671 F.Supp. 720 (D.Utah 1987). The court in *McMullan* found that public policy would prevent enforcement of the regulatory exclusion only in the absence of an insured v. insured exclusion in the policy. The court noted further that the same reasoning was used by the *Oldenburg* court.

A close examination of these cases reveals that the court in *Mmahat* blindly relied upon the

court's decision in *Oldenburg* and applied it even though the policy at issue there contained an "insured v. insured" exclusion. However, in *Oldenburg,* the court relied more on the absence of an "insured v. insured" clause, a clause which excludes coverage for claims brought against any insured by another insured. The court in *Oldenburg* reasoned that since the directors would have been covered had the bank brought an action, it would be against public policy to exclude coverage simply because the bank's right of action had been assigned to FSLIC.

*McMullan,* Civil No. J84–0760(W), at 53.

ly pays it or not. As in *Arryo,* there is no prejudice to American Casualty in this action, except that they may be required to pay on a demand on an insurance contract for the very eventuality for which McIlvaine was insured.

*5. Bad Faith.*

 American Casualty lastly contends that the plaintiff has not presented facts which could support a cause of action for bad faith in their denial of coverage. A breach of the implied covenant of good faith and fair dealing may be actionable in Wyoming in the administering of an insurance policy if the plaintiff can demonstrate that the validity of the claim for which coverage is denied is not fairly debatable. *McCullough v. Golden Rule Inc. Co.,* 789 P.2d 855, 860 (Wyo.1990).

 The plaintiff's complaint is not limited, however, to a wrongful denial of a claim made by McIlvaine. The acts which constitute bad faith, FDIC contends, consisted of ACCO's failing to admit liability under the policy, delaying and withholding payment under the policy and refusing to settle the underlying suit within policy limits. Thus, FDIC urges the Court to find that ACCO also acted in bad faith prior to either admitting or denying the claim. The Court finds that an insurance company's actions in administering a claim in Wyoming are only material to a bad faith action if the claim is ultimately denied although its validity was not fairly debatable.

The question of the proper standard to apply in a case whether the alleged actions in bad faith go beyond denial of a claim, however, has apparently been left open. Presumably, if a claim ultimately proves not to be fairly debatable, a complete absence of investigation by an insurer, or an intentional delay in either settlement or denial of a claim would be relevant to the cause of action in Wyoming.

In *Pace v. Insurance Co. of North America,* 838 F.2d 572 (1st Cir.1988), the circuit court discussed the Wisconsin test, which has

also been adopted in Rhode Island, in this context. The court found that the test includes both a subjective and objective element. The subjective element consists of an insurer's subjective knowledge or reckless disregard of the absence of a reasonable basis to deny a claim, while the objective component is the absence of that objectively reasonable basis to deny the claim. The court held that:

> while the subjective element can be inferred from an investigation that recklessly disregards the facts, the objective element must also be shown. This requires establishing that a reasonable insurer, proceeding under the facts and circumstances that a proper investigation would have revealed would not have denied payment of the claim.

*Id.* at 584.

This reasoning is consistent with the rule established in *McCullough.* There, as did the court in *Pace,*[6] the Wyoming court found that "this objective standard of whether appropriateness of the denial of the claim is fairly debatable will form the focus of this tort." *McCullough,* 789 P.2d at 860. Addressing the standard in *McCullough,* one commentator recently stated:

> An improper investigation standing alone, however, does not establish bad faith if in fact the insurer had an objectively reasonable basis to deny the claim. In other words, if the insured is not able to satisfy the objective test under the Wisconsin standard, the inquiry as to whether the insurer committed bad faith ends.

Smith, *First Party Bad Faith in Wyoming,* 26 Land & Water L.Rev. 225, 255 (1991) (footnotes omitted).

The court agrees that Wyoming has thus far limited the scope of the bad faith tort to those denials of coverage which are done without a de facto objectively reasonable basis. Some jurisdictions recognizing this tort have likewise held that the actions of an insurer in adequately investigating a claim, and presumably then in failing to admit or deny a claim or refusing to pay on a claim,

---

**6.** The circuit court was discussing the holding of the Rhode Island Supreme Court in *Bibeault v.*

*Hanover Insurance Co.,* 417 A.2d 313 (R.I.1980).

are only relevant to a bad faith action when the claim is denied without an objectively reasonable basis. *See, Aetna Cas. & Sur. Co. v. Superior Court,* 778 P.2d 1333, 1336 (Ariz. 1989). *But see, Blue Cross & Blue Shield of Alabama v. Granger,* 461 So.2d 1320, 1328 (Ala.1984), where the Court held that an intentional failure to investigate or a failure to cognitively evaluate and review the findings of an investigation are independent grounds for a bad faith action.[7]

 The FDIC correctly states the standard to apply on summary judgment in this tort action. Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is not genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether these burdens have been met, the Court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.,* 648 F.2d 1272 (10th Cir.1981).

It is enough to assert facts which, if proven, could lead a reasonable trier of fact to the conclusion that American Casualty denied coverage in this instance although the validity of the claim was not fairly debatable. Given the above findings, that the language of the policy unambiguously, as a matter of law, excludes coverage for loss from this type of suit, the Court cannot also conclude that the insurer did not have an objectively reasonable basis to deny coverage. The focus of the Court's inquiry is not the conduct of the insurer in denying the claim nor the informa-tion, or lack thereof, on which it denied the claim, but an objective determination of the validity of the claim. Findings that the claim here is plainly excluded, yet that ACCO's denial of coverage was not even fairly debatable, would create a logical incongruity which the Court cannot tolerate. The bad faith claim must be dismissed.

## CONCLUSION

Finding that endorsement # 1 in the insurance policy issued to the Saratoga State Bank unambiguously excludes from coverage the losses in connection with this suit, and that enforcing the exclusion as written will not violate well defined or dominant public policy, IT IS ORDERED that the defendant American Casualty Company's Motion for Summary judgment on that issue should be, and is, GRANTED;

Finding that endorsement # 2 in the insurance policy issued to the Saratoga State Bank is ambiguous, and that the ambiguity should be construed in favor of coverage, IT IS FURTHER ORDERED that the plaintiff FDIC's Motion for Partial Summary Judgment on that issue should be, and is, GRANTED;

IT IS FURTHER ORDERED that the defendant's motion for summary judgment as it regards exclusion of the claim as outside the definition of "loss" in the insurance policy should be, and is, DENIED; and

IT IS FURTHER ORDERED that the defendant's motion for summary judgment as it regards a breach of the implied covenant of good faith and fair dealing should be, and is, GRANTED.

---

**7.** The court in *Aetna,* 778 P.2d at 1336, cited this case for the opposite position, but his seems to be in error.